# CHARLESTOWN.

### FEAMSTER ET AL. *v.* WITHROW ET AL.

#### September 9, 1876.

1876.
August Term.

1. R. and D., by a writing signed with their names, acknowledge themselves to be due S. $969.87, which they promised to pay as soon as the money can be made on a judgment in the hands of the sheriff of Greenbrier county, in favor of D. against F. *et al.*, with interest from date.—HELD:

That the said writing does not by any of its provisions, have the effect to transfer, or assign, the said judgment debt to S., either at law or in equity.

2. A surety is not entitled to recover from his principal, a greater amount than he has paid for him, but he is entitled to interest on that amount from the date of payment, and necessary costs. If the surety has paid the debt of his principal in depreciated currency, whether confederate States treasury notes, or bank paper, or checks, the general rule is, that he can demand from his principal only the value of that currency, &c., at the time of the payment, and the criterion of that value, is the market value.

3. The second section of chapter 116, of the acts of the legislature of 1872 and 1873, so far as it relates to money paid by any security or accommodation endorser, for his principal debtor, does not apply to, and cannot be applied to money paid by such security, or endorser, for his principal, prior to the time said one hundred and sixteenth chapter took effect, in any suit, or proceeding of such surety, or endorser, against his principal, to recover from the principal for such payment. To apply such part of said second section of said one hundred and sixteenth chapter of said acts of 1872 and 1873, to such case or cases, would violate the constitution of the United States, and the State of West Virginia.

4. A paper writing, purporting to be a statement of the amount paid by one of the parties to a note, who claims that he was in fact

but a security therein, and a receipt purporting to be signed by the cashier of the bank holding said note, appended to said statement, to the party making the payment in full of the debt, which is filed in a chancery cause, as evidence, by one of the plaintiffs therein, and objected to being read as evidence by defendants in the cause, whose interests may be affected thereby, cannot be read as evidence in the cause, unless properly proved. But if said paper writing contains material evidence on its face if read, and there is other evidence in the cause, which proves substantially the same as said paper, the hearing of the cause by the court, upon said paper, is not error for which the decree of the court should be reversed.

1876.
August Term.

Teamster
v.
Withrow.

5. When a bill is filed by the grantor, in a deed of trust, and one of the *cestui que trusts* therein, against the trustee, and the other *cestui que trusts* and others, and a reference is made by the court to ascertain and report the amount of the trust debts, due and unpaid to each of the trust creditors, each trust creditor, interested in the subject, and who is a party, should be allowed to appear before the commissioner and be permitted there, if he chooses, to contest the claim of any other creditors, interested in the trust subject, in whole or part, and such creditor may except to the report of the commissioner, for error therein, in reporting the debt, of such other creditor, and have the ruling or judgment of the court upon such exception, and is entitled to appeal therefrom, where there is error in such ruling or judgment.

6. Where there is an exception filed to the reading of a deposition of a witness, retaken without leave of the court first obtained, and for that cause, if the court, on considering the question, and the circumstances, is of opinion from the character of the deposition excepted to, and the circumstances of the case appearing, that it would have given leave to retake the deposition, if it had been asked so to do, prior to the retaking of the deposition, it should overrule the exception.

7. Any creditor having an interest in the trust subject, and who is a party to the suit, should be allowed to appear before the commissioner to whom the cause is referred, to ascertain the debts, &c., and be permitted there, if he so desires, to contest the claim of any other creditor, in whole or part, to except to the report of the commissioner, as to such debt, in whole or part; to have the ruling of the court thereon, and to appeal from the ruling or judgment of the court thereon, if there be error therein.

Appeal from, and *supersedeas* to, a decree of the circuit court of Greenbrier county, rendered on the thirtieth day of November, 1872, in a suit then pending in said

38

circuit court in which Thomas L. Feamster and others were plaintiffs, and James Withrow Trustee, and others were defendants.

The appeal was granted on the petition of Samuel C. Ludington and William H. Dickson, two of said defendants.

The facts of the case are fully set forth in the opinion of this Court.

Hon. J. M. McWhorter, judge of said circuit court presided at the hearing below.

*J. W. Davis* and *Mathews & Mathews* for appellants.

*Samuel Price* and *Robert F. Dennis* for appellees.

HAYMOND, PRESIDENT:

On the twenty-eighth day of October, 1870, Thomas L. Feamster and Louisa, his wife, and S. W. N. Feamster, filed their bill, with an order of injunction thereon granted by a judge of the circuit court, in the circuit court of the county of Greenbrier, against James Withrow, trustee, Samuel C. Ludington, and others, in which it is substantially alleged that said Thomas L. Feamster, to secure certain of his creditors, on the second day of October, 1860, executed to James Withrow, as trustee, a deed for a large amount of property, both real and personal. An official copy of the deed is filed with the bill, as an exhibit and as part thereof, from which it appears that the said deed is of the date last aforesaid, and was duly admitted to record, in the clerk's office of the county court of Greenbrier, on the sixth day of October, 1860.

By the deed, it appears that said Thomas L. Feamster granted unto the said Withrow the following property, viz. : All the said Feamster's portion of the Arbuckle farm, lying near Lewisburg, which was allotted to him (Feamster) in the division of his father's estate (said portion amounting to one hundred and sixty-two acres), one woman slave, Maria, and her three children, a tract of about fifteen hundred acres of wild land, lying near the

White Sulphur Springs; a tract of about six hundred acres of land in Nicholas county, near C. Bright's; a tract of land in Monroe county, worth about $150; all the said Feamster's interest in the old Donnally property, together with all the said Feamster's cattle, horses, mules, and stock of every description, and all his furniture and farming utensils, in trust to secure the following debts, viz. :

A debt of $1800, due to Matthew Mann, and payable on the twenty-third day of February, 1861, for which he holds a negotiable note, made payable to Samuel C. Ludington, and endorsed by him and D. H. Stalnaker, and to indemnify, secure, and save harmless the said Ludington and Stalnaker from any loss or liability which may have accrued, or may accrue, to them, or either of them, as securities or endorsers upon said note; to secure a debt of $1,300, due the Farmers Bank of Virginia, by negotiable note, endorsed by Samuel C. Ludington, Daniel H. Stalnaker, and William H. Montgomery, and to indemnify, secure, and save harmless, the said Ludington, Stalnaker, and Montgomery, from any loss or liability which may have accrued, or may accrue, to them, or either of them, as securities or endorsers upon said $1,300-note; to secure a debt of $3,500, due the Bank of Virginia, by negotiable note, executed by Thomas L. Feamster and S. W. N. Feamster (for the benefit of the former), and endorsed by J. M. Alderson, Samuel C. Ludington, D. H. Stalnaker, and Thomas Creigh, and to indemnify, secure, and save harmless, the said S. W. N. Feamster, J. M. Alderson, Ludington, and Creigh, from any loss or liability which has accrued, or may accrue, to them as securities or endorsers upon this note; to secure a debt of $200, due the Bank of Virginia, by note endorsed by Joseph A. Feamster and William H. Montgomery, and to indemnify, secure, and save harmless, the said Joseph A. Feamster and Montgomery from any loss or liability which has accrued, or may accrue, to them, or either of them, as his

1876.
August Term.

Feamster
v.
Withrow.

securities or endorsers upon this note; to secure a debt of about $2,000, a balance upon a debt of $4,500, due the Farmers' Bank of Virginia, by note endorsed by Joseph A. Feamster, S. W. N. Feamster, Patsy Feamster, and John M. Alderson, and indemnify, secure, and save harmless, the said Joseph A., S. W. N., and Patsy Feamster, and J. M. Alderson, from any loss or liability which may have accrued, or may accrue, to them, or either of them, as securities or endorsers upon this note; to secure a debt of about $904, due William H. Dickson, for which Samuel C. Ludington and D. H. Stalnaker are securities and endorsers, to indemnify, secure, and save harmless, the said Ludington and Stalnaker from any loss or liability which may have accrued, or may accrue, to them, or either of them, as securities or endorsers for this debt; and to secure Patsy Feamster whatever may be due her (which sum is not now known), either in her own right, or as guardian for her daughters by said Thomas L. Feamster, for money coming to, or due, her or them, from their father's estate; and to secure to Mrs. Feamster, in her own right, and as guardian of her children, any amount which is justly due her, or them, from said Thomas L. Feamster; and to secure to Mrs. M. B. White, or to her husband, any amount that may be justly due him, or her (the amount not now being ascertained), from the said Feamster, as trustee, for her interest in her father's estate; and also to indemnify, secure, and save harmless, the said Stalnaker, Ludington, S. W. N. Feamster, Patsy Feamster, and J. M. Alderson, for any loss or liability which has accrued, or may accrue, to them, or either of them, as the securities or endorsers of the said Thomas L. Feamster, for any and every other debt (as there may be some others not now recollected); and to secure a debt of about $1,400, due Meadow, for which Stalnaker and Ludington are endorsers or securities, and to indemnify, secure, and save harmless, the said D. H. Stalnaker and Samuel C. Ludington from any loss or liability which has accrued, or

1876.
August Term.

Feamster
v.
Withrow.

may accrue, to them, or either of them, as endorsers or securities for this debt; also to secure a debt of about $425, due Williams. for which S. W. N. Feamster is security, and to indemnify, secure, and save harmless, the said S. W. N. Feamster from any loss or liability which has accrued, or may accrue, to him as the security or endorser for this debt (these last two debts of $1,400 and $425 being recollected since the general clause of indemnity for Stalnaker and Ludington, &c., as his securities, and shewing the propriety of such clause).

The trustee is authorized, at the expiration of twelve months, to sell the property conveyed, upon a notice of thirty days, for cash, if, at the expiration of that time, the said debts are not paid, or if the securities or indorsers of said T. L. Feamster, have at any time sustained any loss, or incurred any liability on his account,—the proceeds of sale to be applied to the payment of said debts, and the indemnity of said securities and endorsers, on account of said debts.

The bill alleges that all the creditors secured by said trust deed have been paid their debts, except some of the debts, upon which S. W. N. Feamster is, or was, endorser, the amount of which is uncertain, and cannot be ascertained until a settlement is had between the said S. W. N. Feamster and Thomas L. Feamster; but that said S. W. N. Feamster is not urging the collection of any balance that may be due him as a party to said trust deed; and except a part of the debt due to Martha Mann, and a part of the debt due to William T. Meadow, for which said Ludington is liable as endorser or surety; that the balance due on these two last named debts will not exceed $3,000. That said Ludington, as such endorser, claims that he has paid off a large amount of the indebtedness aforesaid, and that he is pressed for the balance still due on the Meadow debt, which does not exceed $1,000; that in consequence of said alleged payments, and the attempt to collect from him the said balance of $1,000, said Ludington has caused

1876.
August Term.

Feamster
v.
Withrow.

said trustee to advertise the said tract of one hundred and sixty-two acres of land to be sold under said deed of trust, on the twenty-ninth day of October, 1870, for cash. That the greater part of the indebtedness alleged to have been paid by said Ludington, as endorser as aforesaid, was paid in the illegal currency of the Confederate States, and in the depreciated currency of the Virginia Banks. What amount of debts he has so paid, plaintiffs cannot say, but they call upon him to discover fully the amount paid, and the kind of money or currency in which he paid them.

Plaintiffs, also, allege that on the ——— day of October, 1868, said Thomas L. Feamster, by deed of marriage settlement, and in consideration of marriage, conveyed said tract of 162 acres of land to the said S. W. N. Feamster, as trustee of his intended wife, the plaintiff, Louisa M., whom he subsequently married, which settlement and conveyance was duly recorded in said county, an official copy of which is filed. That, by reason of said conveyance, the said Louisa M. became a purchaser of said land, for value; that the tract of land is worth $12,000; that the only ascertained debt for which the same is now sought to be sold, is about $1,000; that the other debts claimed by Ludington are disputed, and their amounts uncertain, if any such properly exist; yet, if said trustee is allowed to proceed with said sale, about $12,000 worth of land will be sold, for cash, to pay $1,000, and this, in the present financial condition of the country, will do plaintiffs great injustice, and sacrifice said land. Plaintiffs pray that said trustee be enjoined, and restrained, from selling the land, until the debts due to the said Ludington, as indorser, and otherwise, shall have been ascertained; that, then, he may be decreed to sell only so much of the lands as will pay such debts, and the debt of Matthew Mann, if he shall desire it; that the sale be made on credit; and, with a view of ascertaining the amounts still due, under

said deed of trust, plaintiffs ask that a reference may be made to a commissioner, etc.

On the twenty-first of October, 1870, the injunction, prayed in the bill, was allowed, as prayed, to take effect, etc. Mann appeared, and filed his answer at rules, 1871, in which he admits the execution of the said deed of trust, for the purposes therein mentioned, but he does not know whether T. L. Feamster, has paid all the debts secured by the deed, except some of the debts for which plaintiff, S. W. N. Feamster, is, or was, indorser, and except the debt due respondent, and part of the debt due W. T. Meadow, or not; that he knows nothing about any of the debts, except his own, which, he knows, has not been all paid; something has been paid, for all which T. L. Feamster has receipts, and about which there is no controversy; that plaintiffs are mistaken in supposing that none of the creditors required execution of the trust, except defendant, Ludington; that respondent is one who required it, and still requires it. He, also, denies all the statements, and allegations, of the bill, not in his answer, specifically, admitted.

On the seventeenth of April, 1871, by leave of the court, defendant Ludington filed his answer to the bill, in which he denies that all the debts, secured by the trust deed, have been paid, except some of the debts, upon which S. W. N. Feamster is, or was, indorser, the debt due Matthew Mann, and part of the debt due W. T. Meadow. He, also, alleges that many more of said debts are still due, and unpaid, and that he has already paid a large sum of money upon the Meadow debt, for which he is security. He, also, avers that, as indorser for, T. L. Feamster, he paid a debt due from him to the Farmers Bank of Virginia, which is one of the debts secured, but he denies, positively, that any part of the said debt was paid in the illegal currency of the late Confederate States, and that, although this debt was paid by him in the currency of the late Virginia banks, which was some-

1876.
August Term.

Feamster
v.
Withrow.

what depreciated, at the time of payment, he only asks, and demands, as he has a right to do, that the value of the said bank currency, may be now returned to him, with interest accrued thereon since it was paid. He asks that the trustee, out of the proceeds of said land, when sold, shall pay to him such amount as is due him, by reason of outlays made by him, and pay the balance still due on the debts, on which he is liable, as surety, or indorser. He, also, denies that there is any necessity for a reference. He, also, denies all the statements, and allegations of the bill, not specifically admitted in the answer.

On the twenty-eighth day of April, 1871, the cause was heard by the court, and referred to Commissioner Alexander Walker, with instructions " to ascertain and report:

" *First.* The debts still due and unpaid, secured in said trust deed, the parties to whom due, and the amount still due to each *cestui que trust.*

" *Second.* A particular statement of any of the said debts, paid by the defendant, Ludington, as the indorser, or security, of plaintiff, Thomas L. Feamster, the amounts so paid, when paid, and the kind of money, or currency, in which they were paid, and the value thereof, and what amount said T. L. Feamster refunded to said Ludington, on account of such payments, and what counter claims, if any, said Feamster holds against said Ludington.

" *Third.* That he make a similar statement of the accounts between the co-plaintiffs, S. W. N. Feamster and Thomas L. Feamster, to that required in reference to said Ludington ; and,

" *Fourth.* That he state specially any other matter deemed pertinent by himself, or required by any party interested," &c.

On the second day of December, 1871, on petition of William H. Dickson, leave was given him to become a party defendant to the suit, and to file his answer, which

was then filed. Dickson, in his answer, avers that, at

March term of the county court of said county of Green-brier, 1860, he obtained a judgment, on a negotiable note, against Thomas L. Feamster, Daniel H. Stalnaker, and Samuel C. Ludington, for $904.56, and $10.64 costs of suit, in which note Feamster was principal and maker, and Stalnaker and Ludington were endorsers; that said judgment is wholly unpaid, and is a lien on all the real estate conveyed in said deed of trust; that said judgment was, on the twelfth day of September, 1860, duly docketed in the judgment lien docket by the clerk of the said county court. He also claims that, by reason of his said judgment being so docketed, it constitutes a lien on said land, and is entitled to payment out of the proceeds of sale of the land before the other creditors, or endorsers, or securities, of said T. L. Feamster, in said deed of trust mentioned. It appears that said judgment of said Dickson was docketed in the clerk's office of said county court, September 12, 1860. It further appears, that said commissioner Walker made his report to the court, to which there were some exceptions filed by plaintiffs, S. W. N. and T. L. Feamster, which will be hereafter noticed.

Afterwards, on the eighteenth day of December, 1871, on motion of S. W. N. Feamster, the report of Alex. Walker, master commissioner, was recommitted to him, with directions to hear such further evidence as might be presented before him, to examine said exceptions and report upon the same, and reform his report according to the evidence now in the case, or thereafter, filed. Commissioner Walker made his supplemental report to the court, to which defendant Ludington, by his counsel, filed several exceptions, and so also the plaintiff, S. W. N. Feamster. The said commissioner also returned, with his report to the court, the evidence taken in the cause before him touching said matter of account, which is all the evidence in the cause, except some exhibits and a statement in writing, hereinafter referred to, which was

39

presented to the court, when the cause was submitted, by the counsel of defendant S. W. N. Feamster.

On the thirtieth day of November, 1872, the cause came on again, to be heard upon the papers theretofore read, the petition and answer of William H. Dickson before filed by leave of the court, and replication thereto, the original and supplemental reports of Commissioner Walker, the exceptions filed thereto by the plaintiffs Thomas L. Feamster and S. W. N. Feamster, and of the defendant Ludington, the statement of a settlement between the Bank of Virginia at Union and plantiff S. W. N. Feamster, dated nineteenth January, 1861, which was tendered, and asked to be filed, at the last term of the court, by said S. W. N. Feamster, during the argument of the cause, and the exceptions filed thereto by defendants Ludington and Dickson. On consideration whereof, the court was of opinion, and so decreed, that the debt of Matthew Mann for the benefit of J. W. Vance amounting on the twenty-fifth day of November, 1871, to $1,839.24, should be allowed ; that, as to the claim of S. W. N. Feamster, the second statement of the supplemental report of Commissioner Walker should be adopted and confirmed, after so modifying the same as to make the credit of Thomas L. Feamster $2,500, instead o $2,212.97, as reported, and correcting therein the interest; and, further, by deducting item·eight of S. W. N. Feamster's account, a claim of $57.16, on account of bond of William Feamster ; that, as to the claim of Ludington, the second statement of the supplemental report of said commissioner should be adopted without any modification; that, as to the judgment filed and claimed by the defendant Dickson, the court being satisfied that he has received the full benefit thereof, and as to him the same has been discharged, it should be dismissed. And the court further decreed, at the same time, that the defendant Mann, for, &c., is entitled to the sum of $1,839, that the second statement of Commissioner Walker's supplemental report as to amount due the.

plaintiff S. W. N. Feamster, with the modification above suggested, by which the amount found due to said S. W. N. Feamster is $6,180.56, with interest from said twenty-fifth of November, 1871, be adopted and confirmed; that the second statement of said supplemental report, as to the amount due the defendant Luddington, to-wit.: $2,386.86, with interest from November 25, 1871, be adopted and confirmed, being the several amounts found due the respective parties, and secured in the deed of trust, in the bill, and proceedings mentioned, and that they recover their respective costs, which are to be paid out of the proceeds of sale under said trust deed. And the court further decreed that all the exceptions, both of the plaintiffs and defendants, inconsistent with the provisions of this decree, be overruled, and that the injunction in the cause be dissolved, and that the defendant James Withrow, trustee, proceed at once to execute the trust, by selling the real estate therein mentioned, in the manner, and upon the terms, provided in said deed, and out of the proceeds pay, first, the expenses of executing and recording said deed, expenses of sale, and the costs of the plaintiff, S. W. N. Feamster, and the defendants, Mann and Ludington, and apply the balance to the payment of the debts of the plaintiff, S. W. N. Feamster, and the defendants, Mann and Ludington, as ascertained and settled by this decree, with interest on the respective sums as fixed, from the twenty-fifth day of November, 1871, and bring the residue, if any, into court, to dispose of as the court may hereafter direct; and the said Withrow was also directed to report his proceedings to the court at a future term.

From this decree, the defendants, Ludington and Dickson, have on their petition obtained an appeal, and also *supersedeas* thereto, from this Court. The appellants, Dickson and Ludington, have assigned and relied on before us upon the following as errors in the said decree for which it should be reversed, viz.:

1876.
August Term.

Feamster
v.
Withrow.

*First.* "The said decree is erroneous in deciding 'that as to the judgment claimed by defendant Dickson, the court being satisfied that he has received the full benefit thereof, and as to him the same has been discharged,' and dismissing his petition."

*Second*—"The Court erred in adopting and confirming the statement of account between Samuel C. Ludington and the plaintiff, Thomas L. Feamster, thus allowing him, not what the bank notes paid to the Farmers Bank cost him, acting in good faith, and buying them on the best terms possible, but only what one of the witnesses (Thomas Mathews) states was the average market value of the notes during the period within which payments were made by your petitioner."

*Third*—" The court erred in overruling your petitioner's exception to the paper on pages 111 and 112 of the record, and considering it as evidence in the cause."

*Fourth*—" The Court erred in allowing S. W. N. Feamster credit for $1,197, as of May 7, 1863 (see item No. 5, in second report), the same being one half the amount of confederate money paid by him and Jos. A. Feamster as sureties for Thomas L. Feamster."

*Fftih*—" The Court erred in giving S. W. N. Feamster credit for $400, as of April 30, 1862 (see item 4 in second account.")

*Sixth*—" The Court erred in allowing S. W. N. Feamster the full amount of the debt due the bank at Union (see item No. 1 in said statement), when he should only have been allowed credit for the good money actually paid, and not the part for which he gave his note in renewal, which he afterwards paid off almost exclusively in Confederate money."

*Seventh*—" The Court erred in overruling the exception of your petitioner to the third deposition of S. W. N. Feamster."

The assignments of error will be considered *seriatim.*

*First assignment.*—It appears from the evidence of J. Griffin Rader that Dickson purchased land from John Snyder, about the year 1859, at from $6,000 to $9,000. Rader also states that he was present at a settlement made between Dickson and Snyder, since the purchase, and that he has no recollection of a debt due from T. L. Feamster being introduced into said settlement, but that he has charged upon his book an execution against Feamster, among other charges against John Snyder, which charges were payments made by Dickson upon the land purchased by him from Snyder; that he (Rader) was at that time doing business for his mother, who was a widow, who made a loan to Dickson, to aid him in paying for this land, and took a deed of trust to secure the payment of the loan; that the charge upon his book of the Feamster debt, might have been made in 1860; and the amount of the execution, as near as he recollects, was upwards of $900; that he cannot state what Feamster this execution was against; that he knew nothing about this execution outside, and independent of, the charge upon his book; that he cannot state positively that said execution was ever assigned to John Snyder, and cannot state in whose favor it was. John Snyder states, in his deposition taken, that in 1859, he thinks, he sold to Dickson a tract of land, and in 1860, in settlement between himself and Griffin Rader, for Dickson, he transferred to him (Snyder) a claim on Thomas L. Feamster for $967.87, at the date of the settlement, in part payment for the land. In answer to questions propounded by Dickson's counsel, on cross-examination, Snyder further says that Rader claimed he had the land to pay for, or would pay for it, and that he would take all Dickson's means to pay for it first, and that he (Rader) would pay the balance; that he (Rader) did not show him (Snyder) any authority to make the transfer to him. Snyder was then asked by

Dickson's counsel, if Dickson did not give to him (Snyder) a due bill or note for $967.87, dated October 1, 1860, signed by said Dickson and G. A. Rader, in part payment for said land, which expressed upon its face that it was to be paid as soon as the money on a judgment, in the hands of the sheriff at the time, in favor of said Dickson v. Thomas L. Feamster could be made? And he answered that he (Snyder) did not remember that he did. A note in these words was then handed to said Snyder, viz: " Due John Snyder nine hundred and sixty-nine dollars and eighty-seven cents, which we promise to pay as soon as the money can be made on a judgment in the hands of the sheriff of Greenbrier county, in favor of William H. Dickson vs. Thomas L. Feamster et al., with interest from this date, October 1st, 1860.

(Signed :)                         G. A. RADER,
                                   W. H. DICKSON."

And he (Snyder) was then asked this further question by Dickson's counsel: You will please examine the due bill here shown you; say if you are the John Snyder mentioned in said due bill, and was it given to you in part payment of the land sold by you to Dickson? And he (Snyder) answered: " I think I am the John Snyder mentioned in the due bill, and the precise amount of the debt corresponds with memoranda which I have; this due bill was transferred to me in part payment for said land; this is the same $969.87 referred to above." He further states that it is his impression that said transfer was made before October, 1860, or about that time. This is the substance of the whole of Snyder's evidence.

S. W. N. Feamster, in his last deposition taken before the commissioner, was asked by his counsel if he knew anything of the judgment of William Dickson v. Thos. L. Feamster, and if so, to state all he knew about it, and any knowledge he had of its payment, to which he answered : " I saw in the deed of trust executed by Thomas L. Feamster to James Withrow, trustee, a debt due to

Wm. Dickson, referred to; I took a copy of said deed, and when I met Dickson, I asked him about it; he said that Thomas L. Feamster did not owe him anything; that the debt had been settled; he repeated this on several occasions. William H. Dickson was examined as a witness by his counsel, and he states in his examination-in-chief, substantially, that he never did assign or transfer his said judgment against Thomas L. Feamster to John Snyder, or any one else, so far as he recollects; that he never authorized Griffin Rader to contract, dispose of, or transfer said judgment; that said judgment has never been paid, that he knows of; that the note to John Snyder for $969.87, aforesaid, is not in his possession now; that if it has ever been he does not recollect it; that he does not recollect ever having executed such a paper.

On cross-examination he (Dickson) further states, that he never received the benefit of the judgment in his favor against said Thomas L. Feamster in payment of the land he purchased of John Snyder, to the best of his recollection, but he is not certain enough to swear positively; that he cannot say in what manner the land he purchased from Snyder was paid for; that if J. G. Rader transferred the judgment against Thomas L. Feamster, in making the settlement with John Snyder, it is to be presumed that he authorized Rader to do so; that would be the general supposition, if he did do it; that he does not know that J. G. Rader was interested as agent for his mother in seeing that the land was paid for; nor does he recollect that he was not; that he has no recollection that he (Rader) made the settlement at his request or approval; that he has no recollection of ever having been called upon by any person for the payment of the due bill referred to in said Snyder's deposition. This is the substance of all the evidence appearing in the cause bearing on the payment of said judgment.

For some reason, John Snyder was not asked whether the judgment was paid, or not. If it was transferred to him, and paid after the transfer, it would most probably

have been paid to him, or he would likely, have some knowledge about it. If Thomas L. Feamster paid the debt to Dickson, or Snyder, or the sheriff, he would most likely have known it, and it was competent, and proper, to prove that fact by him—still, he was not examined as a witness on the subject. If the debt was made by the sheriff, out of the property of T. L. Feamster, or the money received by the sheriff, in whole, or part, that fact could easily have been proved by the sheriff, so far as is disclosed by the record. No excuse, or reason, whatever, is shown by the record, why Thomas L. Feamster, and the sheriff, were not examined, as witnesses, in relation to the payment of said judgment. There is no evidence in the record, tending to show that said judgment had been paid, except the statement of S. W. N. Feamster, which is, in effect, substantially, contradicted by Dixon. This debt is proven by the judgment of a court of record, and, also, by the deed of trust, which is evidence of the most conclusive character, of the existence of the debt, and its justice. To justify the court in determining that the judgment had been paid, the evidence should have established the fact with reasonable certainty, and it seems to me that the evidence adduced, bearing on that subject, so far as disclosed by the record, fails to prove that fact, but considering the whole evidence, the most reasonable conclusion to be deduced therefrom, is, that the said judgment debt was never paid. If it had really been paid, to Dickson, Snyder, the sheriff, or any other person, authorized to receive it, by Thomas L. Feamster, so far as I can now see, it was in the power of the Feamsters to have proven the fact, satisfactorily, by a living witness, or witnesses. S. W. N. Feamster is an interested witness, and so, also, is Dickson, and their evidence may be well set-off, one against the other. And if their evidence is thus disposed of, then, there is no evidence, whatever, tending to prove the payment. It is true, that there is some evidence, tending to prove that said judgment debt had been transferred, by said Rader, for

Dickson, to John Snyder; still, it is not satisfactory, on this point, and there is no evidence proving that the judgment had been paid to Snyder. If the judgment was properly transferred to Snyder, then the court should not have determined that the judgment had been satisfied, without Snyder first being made a party to the suit. The said note did not, by any of its provisions, have the effect to transfer, or assign, the said judgment debt to said Snyder, either at law, or in equity. *Eib v. Martin,* 5 Leigh. 132; *Dickinson v. Phillips,* 1 Barb. (N. Y.) 454; *Hoyt v. Story,* 3 Barb. (N. Y.) 262.

A mere promise, though of the clearest, and most solemn kind, to pay a debt out of a particular fund, is not an assignment of the fund, even in equity. To make an equitable assignment, there should be such an actual, or constructive, appropriation of the subject matter, as to confer a complete and present right on the party meant to be provided for, even when the circumstances do not admit of its immediate exercise. *Christmas v. Russell,* 14 Wallace R. 69. For these reasons, I think the said first error assigned is well taken.

*Second assignment of error.* In the case of *Butler v. Butler's Admr,* 8 West Virginia R. p. 674, decided at August term, 1873, this Court *Held,* " 1. That a surety who, without fault attributable to himself, pays the debt of his principal, has the right to demand reimbursement from his principal.

" 2. The surety is not entitled to recover from his principal a greater amount than he has paid for him, but he is entitled to interest on that amount from the date of payment, and necessary costs.

" 3. If the surety pays the debt of his principal in depreciated currency, the general rule is, that he can demand from his principal only the value of that currency at the time of the payment, and the criterion of that value is the market value."

The second statement of the commissioner, referred to

in this assignment, is the second statement in commis- sioner Walker's supplemental report, made and filed in the cause, as appears by the decree of the court. It fully appears, by the evidence before the commissioner, that all the amounts, or debts, paid by the said Ludington, as security, or indorser for Thomas L. Feamster, were paid in par money, or depreciated bank paper, and checks on such bank, which were worth only as much as such depreciated bank paper. The commissioner, in making up said second statement, allowed said Ludington for the full amount of all the par money he paid as security, and the market value, as proven by the evidence, of all the depreciated bank paper, and checks on such bank, which he paid, as security for said Thomas L. Feamster, making, in the aggregate, $2,386.86, and that amount the court allowed said Ludington, in its said decree of the thirtieth of May, 1872, which, as we have seen, was just, and proper, and all to which said Ludington was then entitled, or could recover against said Thomas L. Feamster, under the decision of this court, above cited.

The second error assigned, by the appellant, touching said decree, is, therefore, not well taken, and must be overruled, unless the second section of chapter 116 of the act of the legislature, passed April 7, 1873, should govern this Court in the decision of this question. See Acts of 1872 and 1873, pp. 307 and 308.

The said second section is in these words: " When- ever it shall appear that any such contract was, according to the true understanding and agreement of the parties, to be fulfilled or performed in Confederate State treasury notes, or Virginia treasury notes, or was entered into with reference to such notes as a standard of value, the same shall be liquidated and settled by reducing the nominal amount due, or payable, under such contract, in Confederate States treasury notes, or Virginia treasury notes, to its true value at the time they were respectively made and entered into, or at such other time as may to the court, or, if it be a jury case, to the jury, seem right

in the particular case; and upon the payment of the value, as ascertained, the party bound by such contract shall be forever discharged of, and from, the same, provided that, in all cases where actual payment has been made of any sum of Confederate States treasury notes, or Virginia treasury notes, either in full or in part, of the amount payable under contract, the party by, or for, whom the same was paid, shall have full credit for the nominal amount as paid, and such payment shall not be reduced. And if any debt, payable in coin, or its equivalent, by a principal debtor, has been paid by the security for such debt, under, and by virtue of, a judgment against such security, or other demand for payment upon such security, so that such payment shall operate as a discharge of the principal debtor from his original obligation, under the provisions of this act, in any controversy between such security so paying and the principal debtor, the mode of payment by such security shall not be inquired into."

It is argued by counsel, that the latter clause of this section applies to this case, and should be now applied by this court, notwithstanding the act was passed, and took effect, after the debts were paid by the appellant Ludington, as security. or endorser, and after the decree of the court, ascertaining and settling, according to law, the amount Ludington was entitled to demand, and the extent of the liability of the principal debtor. It is true that, in Cooley's Con. Lim., page 381, 1 Ed., it j is declared that: "The bringing of suit vests no right to a particular decision.; and the case must be determined on the law as it stands when the judgment is rendered. *
* And if a case is appealed, and the law is changed pending an appeal, the Appellate Court must decide according to the law in force when their decision is rendered." This declaration, however, is made in the discussion of what are called "curative statutes."

This declaration of Mr. Cooley, of course, if correct, cannot be applied where the act or law is not retrospec-

tive, or where its application would be violative of some constitutional provision. If the provisions of the last clauses of said second section were applied to this case, then the demand of the security, Ludington, against the principal debtor, and the extent of the liability of the principal debtor to said Ludington, for money paid as security or endorser, would be thereby largely increased, and the rights and obligations of the principal debtor materially changed to his injury and prejudice, and for the benefit of the security.

Can the provisions of the section now under consideration be applied to this case so far as relates to appellant, Ludington, without violating the Constitution of the United States, or of this State ?

In the case of *Kendrick et al. v. Forney*, 22d Gratt, 748, Judge Anderson, in delivering the opinion of the Court, says: " But in this case the payment having been made by the surety in the lifetime of his principal, it has no where been held, in this country or England, that the principle of subrogation is applicable. He must stand alone upon his implied contract of indemnity. As was said by the Lord Chancellor Cottenham in *Reed v. Norris*, 14 Cond. E. C. R. 362, 375, the contract between him and his principal is that the principal shall indemnify him from whatever loss he may sustain by reason of incurring an obligation, together with the principal. It is on a contract of indemnity that the security becomes liable to the debt. It is by virtue of that situation, and because he is under an obligation as between himself and the creditor of his principal, that he is enabled to make the arrangement with that creditor. It is his duty to make the best terms he can for the person in whose behalf he is acting. His contract with the principal is indemnity." He then asks the question : "Can the surety, then, settle with the obligee, and instead of treating that settlement as payment of the debt, treat it as an assignment of the whole debt to himself, and claim the benefit of it, as such, to the full amount,

thus relieving himself from the situation in which he stands with his principal, and keeping alive the whole debt?" This question he answers in the negative, and says he is prepared to make a precedent. But this was unnecessary, as Lord Eldon in *Rushforth, ex-parte*, 10 Ves. R. 409, 420, and *Butcher v. Churchill*, 14 Ves. R. 567, had laid down the rule " that where a surety gets rid of and discharges an obligation at a less sum than its full amount, he cannot, as against his principal, make himself a creditor for the whole amount, but can only claim as against his principal what he has actually paid in discharge." The same doctrine is asserted by eminent text writers, and in various decisions both in England and America. 1 Stor., Eq. Jur., ¶ 499 b., and 499 c.; Pittman on Principal and Surety, Law Lib., vol. 40, top p. 98, marg. 134, and cases cited. And it is expressly held by this Court in *Blow v. Maynard*, 2 Leigh 29." Thus it is seen, according to this case, the liability and extent thereof, of the principal to his surety, is based, generally, upon an implied contract of indemnity, and that the contract, under the settled law, fixes the extent of such liability. As between Ludington and Thomas L. Feamster, his principal debtor, the implied contract of indemnity was complete, and that contract, under the settled law, fixed the extent of such liability; and the actual loss sustained by the surety, by reason of his suretyship, had occurred before the said chapter, of which said second section is a part, took effect. The effect of applying the last clauses of said second section as contended for by the appellant, Ludington, would not be to cure a defect in the contract of indemnity, so as to give effect thereto according to the intent of the parties, but would be to change the contract materially, and compel the principal debtor, Feamster, to pay and give the surety, more than he contemplated or covered, or intended to be covered by the contract. To apply such legislation to this case, would be to grant that the legislature could, by an enactment, at its pleasure, increase the obli-

1876.
August Term.

Feamster
v.
Withrow.

gations of a contract, or, in other words, "impair the obligation of such contract." This would clearly violate the ninth section of the first article of the constitution of the United States, in so far as it declares that no State shall pass any law impairing the obligation of a contract, and also the last clause of the fourth section of the third article of the constitution of this state, which declares that no law impairing the obligation of a contract shall be passed.

It is also argued that it would violate, substantially, the tenth section of said third article, in so far as it declares that no person shall be deprived of property without due process of law, or the judgment of his peers, but it is not necessary to decide that question here. It would interfere with, and deprive the principal debtor of a right created by and vested under contract. "It seems that a right cannot be considered a vested right, unless it is something more than a mere expectation, and has already become a title, legal or equitable, to the present or future enjoyment of property, or the present or future enforcement of a demand, or a legal exemption from a demand made by another. As Mr. Justice Woodbury expresses it, acts of the legislature cannot be regarded as opposed to fundamental axioms of legislation, " unless they impair rights which are vested; because most civil rights are derived from public laws; and if, before the rights become vested in particular individuals, the convenience of the State procures amendments or repeals of these laws, these individuals have no cause of complaint. The power that authorizes or proposes to give, may always revoke before an interest is perfected in the donee." And Chancellor Kent, speaking of retrospective statutes, says that such a statute, " affecting and changing vested rights, is very generally considered, in this country, as founded on unconstitutional principles, and, consequently, inoperative and void."

But this doctrine is not understood to apply to reme-

dial statutes, which may be of a retrospective nature, provided they do not impair contracts, or disturb absolute vested rights, and only go to confirm rights already existing, and in furtherance of the remedy by curing defects and adding to the means of enforcing existing obligations.  Such statutes have been held valid, when clearly just and reasonable, and conducive to the general welfare, even though they might operate, in a degree, upon vested rights ;" Cooley Con. Lim. 359, first Ed. ; first leading cases in Eq., top page 153, marginal 111. Other parts of said one hundred and sixteenth chapter may doubtless be given a retrospective operation in so far as they tend to the execution or enforcement of contracts, according to the intent of the parties, and, perhaps, in some other respects, but it is manifest that to apply the last clause of the said second section to the case now before us, as between Ludington, the surety, and Feamster, the principal debtor, would be a flagrant violation of the constitution of the United States and of this State. And although there is, in some respects, perhaps, a difference in the relations of ordinary principal debtor and security, and the maker and an accommodation endorser of a promissory note, yet, in respect to the amount an accommodation endorser is entitled to recover from the maker, or person for whose benefit the note is made and endorsed, in case he pays it, is in no wise different from that of an ordinary surety. For these reasons the appellant's second assignment of error is not well taken, and is overruled.

I do not mean to be understood in what I have said upon the said second assignment of error, as expressing an opinion that the last clauses of said second section may not be applied in proper cases of loss arising after the said one hundred and sixteenth chapter took effect. I express no opinion upon that subject here, because no question of the kind arises upon the record in this case.

*Third error assigned.*—The paper referred to in this

assignment, is found on page 79 of the printed record in this case, and is headed "statement." "Bank of Virginia, Union v. Thos. L. Feamster, and S. W. Feamster, drawers, and J. M. Alderson, S. C. Ludington, D. H. Stalnaker and Thomas Creigh, endorsers:

| | | |
|---|---|---|
| Amount of debt due May 26, 1861 | | $ 3,500 00 |
| Notarial fees | | 3 20 |
| Interest to 19th January, 1861 | $ 136 62 | |
| Costs of suit, including sheriff's costs, $3 | 13 00 | |
| | | 149 62 |
| | | |
| | | $3,652 82 |
| By cash of Newman Feamster | 750 00 | |
| By proceeds of his note at 116 days | | |
| 2,962.04, off $50.22 | 2,902 82 | |
| | | $3,652 82 |

Received from S. W. N. Feamster, thirty six hundred and fifty-two dollars and eighty-two cents, as above, in full of execution in hands of sheriff Greenbrier county, in favor of Bank of Virginia, at Union, against the above parties.

    (Signed)          M. McDANIEL, Cashier."
*Janary 19th,* 1861.

This paper does not appear to have been presented before the commissioner by S. W. N. Feamster, although from its date, it would seem that it was in his possession and might have been produced there, and proved. In one view of the case, the said paper was important to S. W. N. Feamster, as evidence before the commissioner to prove, that the $750. paid by S. W. N. Feamster to the Bank of Virginia, and his negotiable note, made to the said bank by him, was accepted by the bank in discharge and satisfaction of the $3,500 debt originally due from Thos. L. Feamster to the bank, or that by said note, or the proceeds thereof, T. L. Feamster was released from further liability from said debt if said paper was, in fact, a receipt for the debt due said bank from Thos. L. Feamster, for which S. W. N. Feamster was, in fact, a securi-

ty, and not a principal. From the contents of said paper, unexplained by other evidence, it would seem that the debt therein mentioned, was the joint debt of Thomas L. Feamster and S. W. N. Feamster, but the debt to said bank is described in the deed of trust as $3,500. due the Bank of Virginia, by negotiable note, executed by Thomas L. Feamster, and S. W. N. Feamster (for the benefit of the former) and endorsed by J. M. Alderson, &c. Perhaps it should be considered that the description of the debt in the deed of trust in connection with S. W. N. Feamster's evidence in the cause, may be considered as a sufficient explanation and identification as to its being the same debt, and that in fact the note given to the bank, and its proceeds were in fact for the exclusive use and benefit of said Thomas L. Feamster, though said S. W. N. Feamster neither exhibits or refers to said paper in his evidence. This paper is not made an exhibit by the bill, nor is it noticed or mentioned in any part of the proceedings in the cause, except in the decree appealed from, and it would seem that the first time it was shown or presented in the cause, was when the cause was being argued for submission to the court, upon the commissioners reports, &c., and exceptions to said reports, for final hearing. There is no evidence that M. McDaniel was cashier of the bank or of the execution of the paper. It appears that said Ludington and Dickson objected to said paper as evidence in the cause, and endorsed exceptions thereon. These exceptions do not admit the genuineness of the paper, or dispense with the necessary and proper proof to make it admissible as evidence. The said paper was clearly inadmissible as evidence in the cause, in the absence of proper proof of its genuineness, it being objected to, &c. 1. Greenleaf on evidence, section 557. 3 Greenleaf on Ev., sections 308, 309, and the court could not properly read or consider it in the cause as evidence. But if said paper contains material evidence on its face, is read, and there is other evidence in the cause which

41

1876.
August Term.
Feamster
v.
Withrow.
proves substantially the same as said papers, the hearing of the cause by the court upon said paper, is not error for which the decree of the court should be reversed, because in that event it is not material whether the cause was heard by the court on said paper, or not, as the same facts appear without said paper as with it.

*The fourth error assigned.* It clearly appears from the evidence in this cause, that one Arbuckle, who was the debtor of S. W. N. Feamster, and Joseph A. Feamster, jointly, paid the $2000. debt due the bank at Lewisburg, from Thomas L. Feamster, with Joseph A. Feamster and S. W. N. Feamster, as sureties, in Confederate States treasury notes for said Joseph A. Feamster and S. W. N. Feamster, after the debt became payable. Arbuckle paid the debt, interest and costs, with $2,394.88 in Confederate treasury notes. It is true that Joseph A. Feamster and S. W. N. Feamster at sometime after Arbuckle discharged the debt, give Arbuckle credit for that amount on said judgment which they owned against him. But the transaction can only be regarded in this case as if Arbuckle had paid the amount in Confederate treasury notes to said last named Feamsters, and they, as the securities of Thos. L. Feamster, had paid it into the bank in discharge of said debt, notwithstanding said Feamsters chose to give Arbuckle credit for the whole amount of the nominal value thereof. As against Thomas L. Feamster and the other creditors of said Thomas, as well as his securities and endorsers, interested in the property embraced in said deed of trust, and the proceeds of the sale thereof for the payment of their debts and their indemnification, the said S. W. N. Feamster was only entitled to have allowed to him the market value of one half the nominal amount of the Confederate treasury notes with which said debt to the bank was paid, at the time the payment was made to the bank, with interest from the time of payment, and the commissioner and the court erred in its decree, in allowing S. W.

N. Feamster credit for the nominal amount of one half of the amount so paid in Confederate treasury notes to the bank, with interest thereon from the time of payment.

But it is insisted by the counsel for the appellees, that, as Thomas L. Feamster did not except to the report of the commissioner for this error, the appellants should not be heard to do so. In all cases of this sort, each creditor interested in the trust subject, and who is a party, should be allowed to appear before the commissioner, and should be permitted, there, if he chooses, to contest the claim of any other creditors. Stor. Eq. Jur. vol. 1, sec. 548; *Wilkins v. Gordon and wife, and others*, 11 Leigh. 547; *Griffin's exrs, et al. v. Macaulay's admr*, 7 Gratt. 476, 2 vol. Robinson (old) Practice, 46.

It would be strange, indeed, if the creditors, and securities, and indorsers, in this case, should not be allowed to contest the claims of each other, before the commissioner and the court. A rule to this effect, in equity, would certainly operate great injustice, and tend to sustain and promote fraud. The fourth assignment of error is well taken and sustained.

*The fifth error assigned.* The commissioner, in his supplemental report, second statement, states that this $400 was paid on the thirtieth day of April, 1862, on the debt of Kent, Payne & Co., for which S. W. N. Feamster was security in delivery bond. I have not been able to discover from the evidence before the commissioner, the exact time when this $400 was paid by S. W. N. Feamster, or in what kind of money it was paid, but the commissioner fixes the period of payment at the time last aforesaid, in his supplemental report, and I see nothing in the record from which it could be inferred that this $400 was paid in Confederate money, except what the commissioner says, in his second statement of his original report, and there, he says it was paid thirtieth of April, 1862, (probably in Confederate money),

and except, also, the time at which it is stated to have been paid. As this case will have to be recommitted to a commissioner, to restate, and reform, his account, in material particulars, it is not necessary now to determine whether it was paid in Confederate treasury notes, or not, as further proof may be taken on that subject. But it is sufficient to say, that, if it was paid in Confederate treasury notes, or any depreciated bank notes, or other depreciated treasury notes, then said S. W. N. Feamster should only be allowed what was the market value of such treasury notes, or depreciated bank paper, at the time the same was paid.

*The sixth error assigned.* Item No. 1, referred to in this assignment, is the debt of $3,500, mentioned in the deed of trust, due to the Bank of Virginia, at Union, and it is described by the commissioner, in his second statement of his supplemental report, as being a debt due to the Bank in Union, from Thomas L. Feamster, and paid by S. W. N. Feamster, indorser, or security, on the nineteenth day of January, 1861, as stated in first report, amounting, at time of payment, to $3,652.82. The chief evidence touching the payment of this debt, now appearing in the record, is that of S. W. N. Feamster, and he says he paid for Thomas L. Feamster, on the debt of $3,500, mentioned in said trust deed as due to the Bank of Virginia, at Union, on the nineteenth of January, 1861, $750, and the balance of said debt, amounting to $2,902.80, was paid by his negotiable note, which was subsequently paid off by him in Virginia bank notes and Confederate money, the exact amounts of each not recollected, the last being paid in 1862, to the best of his recollection. At another place he says: "Upon the bond mentioned by me as being paid in bank, at Union, I paid, on the eighteenth day of May, 1861, $140, bankable money; I then renewed the note for sixty days, and then made another payment of $150, I suppose, in bankable funds."

This evidence fails to show, sufficiently, that the negotiable note executed by S. W. N. Feamster was accepted by the bank, in satisfaction, and discharge, of the original debt.

The appellants insist, in argument, that the giving of the note to the bank was not a satisfaction of the original debt, and that nothing short of the payment of the money by the surety, or accommodation indorser, although the note was given, and accepted, in satisfaction, by the bank, of the original debt, could give the surety, or such indorser, a right of action against the principal debtor. For this proposition there seems to be some authority. It was held, by the Supreme Court of Appeals of this State, in the year 1869, in the case of *Lazier v. Nevin, assignee, &c.,* 3 West Va. R. 622, that, "A promissory note cannot be pleaded in bar to an action upon a simple contract." This decision is based on authority of the case of *Roads v. Barnes,* 1 Burrows 9, and *Cole v. Sackett, &c.,* 1 Hill (N. Y:), 516. See opinion of Judge Maxwell, on page 627, 3 West Va. R.

In the case of *Cole v. Sackett,* 1 Hill, it was, *held,* "that the promissory note of a debtor given for a precedent simple contract demand will not operate as payment, so as to preclude the creditor from suing on the original consideration, though given under an express agreement that it was to be received in full satisfaction and discharge; otherwise, if the note be that of a third *person.* The case of *Anneld v. Camp,* (12 Johns. R. 409,) considered and disapproved. E. and C. being in partnership, gave their note for a precedent debt of the firm under an agreement that it should be received in full satisfaction and discharge. Afterwards they dissolved, E. agreeing, for a consideration received from C., to assume and pay the debt for which the note was given; in pursuance of which arrangement, C. took up the note, and gave his own in lieu thereof. *Held,* no bar to the original consideration."

It seems there is authority, apparently, against the prin-

ciples decided in the above cases. That is to say : that the taking of new security from one of the joint debtors will release the others only, where there is an agreement by the creditor that he shall be released. See opinion of this Court in case of *Miller v. Miller*, 8 West Va. R. 542 and cases there cited ; *Sheeky v. Mandeville and Johnson*, 6 Cranch 253 ; *Peter v. Beverly*, 10 Peters 235 ; *Barclay & Proctor.v. Gooch*, 2 Espinasse R. 571.

Sedgwick in his work on the measure of damages at page 319 says : "The rule appears to be well settled in this country, though far from being clear in England, that the giving by the surety of his negotiable promissory note, which is received not as collateral, but as actual payment of the original debt, will be held to be payment as against the principal debtor, and that the surety may at once proceed against him for the amount of his note. While on the other hand it is held that the giving a bond will not have the like effect and that, until the payment of the bond, the security has no claim against his principal ;" also 326, *Cornwall v. Gould*, 4 Pick. 444 ; *Doolittle v. Dwight*, 2 Met. 561. But at p.p. 328–329, Sedgwick on the measurement of damages says: "I am constrained to say, upon a review of these cases, that the English rule as settled by the case of *Maxwell v. Jameson*, appears to me to be the sounder one, and more in accordance with the cardinal principle upon which I have already often insisted, that actual compensation shall only be recovered for actual loss. There is no foundation whatever, for any distinction between a note and a bond ; the question turns, or should turn, on the fact of the amount of money actually paid by the surety to relieve his principal," &c. See 2 Robinsons (New) Practice p. 438.

As this case now stands, the question does not arise, whether if the note of S. W. N. Feamster had been accepted by the bank in satisfaction of the said original debt, or the proceeds applied to the payment thereof, S. W. N. Feamster would thereafter have been entitled to

sue his principal debtor for money paid to his use, because the evidence, which we may consider, does not prove such a case. I, therefore, do not definitely decide that question at this time.

As the case was presented to the commissioner, and to the court, by legal evidence, said note of S. W. N. Feamster, given to said bank on the nineteenth day of January, 1861, should not have been treated as payment and satisfaction of the original debt, and for whatever amount the said S. W. N. Feamster paid on said debt, after the date of his said note, in depreciated bank paper, or Confederate States treasury notes, he should only have been allowed the market value thereof at the time of payment. Still, as this case must be recommitted to the commissioner, I think said S. W. N. Feamster should have an opportunity, under the peculiar circumstances of the case, to present additional evidence touching the question as to whether his said note was accepted in full payment and discharge of the balance due on the original debt to the bank, or whether the proceeds of such note was applied to its payment.

For the foregoing reasons, it seems to me that the sixth assignment of error is well taken as the case now stands.

*The seventh assignment of error.* It does not appear, by the decree of the court, that the court acted on the exceptions of appellants to the " third" deposition of S. W. N. Feamster, endorsed at the foot of the deposition, or that the appellants called the attention of the court to the exception, and asked the court to rule thereon. Under such circumstances, according to the well established rule, the appellants must be taken to have waived the exception. Still I think it not improper to say, that the first deposition or statement of S. W. N. Feamster, was taken by the appellants, and what is called the second, is simply the cross-examination of said Feamster by his

counsel; and the third deposition, in the most material part thereof, is upon the subject of the judgment of Dickson being settled; and from the record, it appears that said judgment had not been claimed, or set up, by Dickson in the cause, or before the commissioner, until after what is called the first and second depositions were taken, and as it is clear that the court would have given leave to take said Feamster's deposition upon that subject, and, further, as the matter of allowing the retaking of depositions of witnesses in chancery causes must, to a great extent, be left to the exercise of the discretion and judgment of the chancellor, so the overruling of exceptions to depositions of witnesses, retaken without the leave of the court, must, in a great degree, be left to the exercise of the discretion and judgment of the chancellor; and where there is an exception filed to the reading of a deposition of a witness, retaken without leave of the court first obtained, and for that reason, if the court, on considering the question and the circumstances, is of opinion, from the character of the deposition excepted to, and the circumstances of the case appearing that it would have given leave to retake the deposition, if it had been asked so to do prior to the retaking of the deposition, it should overrule the exception.

I think it is clear, from what has been said, that the first statement of accounts, as well as the third statement of accounts between S. W. N. Feamster and Thomas L. Feamster, in the supplemental report of the commissioner, are materially erroneous, and that the court did not err in refusing to adopt either of them. The appellee, S. W. N. Feamster, assigns the following errors in said decree of the court, viz:

" *First*. Because the court failed to adopt the third statement of the supplemental report of Commissioner Walker, whereby the said plaintiff was shewn to be entitled to $8,855.20, instead of only $6,180.66.

" *Second*. Because the court allowed a credit of $2,500

as the price of the negroes, instead of $2,212.97, the true amount for which the negroes were sold.

" *Third*. Because the item of $255, consisting of various loans, was rejected by the commissioner, because the item of $150, price of a horse, and the item of $250, for keeping stock, were disallowed.

" *Fourth*. Because the item of $57.16 was disallowed by the court. It was not excepted to by anybody. It was Thomas L. Feamster's part of a bond due from the estate of their father, William Feamster, deceased.

" *Fifth*. Because the commissioner charged S. W. N. Feamster with the value of the horses taken to Lynchburg for sale. He acted as agent for his brother, and not as purchaser."

I will consider these errors consecutively. The first error, for reasons hereinbefore stated, is not well taken, and is overruled.

The action of the court, in charging S. W. N. Feamster with $2,500, as the price of the negroes, and crediting Thomas L. Feamster therewith, instead of $2,212.07 reported by the commissioner, it seems to me, was correct. It is fully authorized and supported by the evidence of Joseph A. Feamster, to which full credit should be given. The second error, therefore, is not well assigned.

*The third error.*—The appellant, S. W. N. Feamster, in his deposition on page forty-six, printed record, which was before commissioner Walker in making his first report, says, "That Thomas L. Feamster is entitled to another credit of $494, as of the thirtieth day of September, 1871, as made due by me, although on a settlement between us, he claims a credit of about $200 more ; this credit is made up of different items of an account stated between us." Afterwards at pages fifty-one and fifty-two of printed record, he says that he omitted one debt in the list of debts above given, which is as follows, to-wit: one horse sold Thomas L. Feamster in the summer of

42

1862,, worth $150; nothing was said about Confederate money, or about the price of the horse at the time of the sale and delivery of said horse, this horse was not embraced in the settlement between myself and said Thomas L. Feamster; also $255, being the amount of several loans to said Feamster in Confederate money in the years 1862–3. From the evidence of S. W. N. Feamster, as above detailed, it is seen that in September, 1871, Thomas L. Feamster in effect, paid S. W. N. Feamster $494. on an account stated between them on a settlement—this account stated and settlement, was made up of different items, but the items are not stated or shown. S. W. N. Feamster does not state why the $150, price of the horse, was left out of the said settlement; he does not claim that it was by fraud, mistake, or accident, and it appears that the settlement was made about nine years after the horse was purchased. S. W. N. Feamster does not state that the $255. Confederate money loan, was not embraced in said settlement and account stated. He does say that Thomas L. Feamster did claim on said settlement about $200. more than the $494. I do not think, under the circumstances appearing that the evidence of S. W. N. Feamster, shows sufficient cause for disturbing or opening the settlement and account stated between him and his brother under the principles of law governing in such cases. As to the $250. claimed by said S. W. N. Feamster for keeping stock, it is quite clear he is not entitled to it; this stock the commissioner and the court properly treated as his. He is properly charged with the price at which he sold the horses of Thomas L. Feamster, in Lynchburg, deducting the costs of sale under the evidence of Joseph A. Feamster, especially, as he is credited by the commissioner with the full amount of the debt of Kent, Payne & Co., for which he was security for Thomas L. Feamster, in a bond for the delivery of said horses, and which debt he paid. The said third assignment of error is, therefore, not well taken, and is overruled.

*The fourth assignment of error.*—I am unable to see any error in the court disallowing the item of $57.16 cents in the decree mentioned, and I see no evidence in the printed record to authorize the allowance of it.

*The fifth assignment of error.*—For reasons above stated, this assignment of error is not well taken, and is overruled.

It seems to me there are no errors in the said decree of thirtieth of November, 1872, other than herein before indicated, unless it be as to the $400 aforesaid, which the commissioner says was probably paid in Confederate money. But I have not been able to ascertain, from the evidence in the record, the market value of Confederate States treasury notes, or Virginia bank paper, in 1862 and 1863. I am, therefore, unable to ascertain the market value of the Confederate money and Virginia bank paper paid by S. W. N. Feamster as security, or accommodation endorser, of his brother, Thomas L. Feamster, in those years. Under the peculiar circumstances of this case, I think this cause should again be recommitted to a commissioner of the circuit court to hear further proof as to the alleged payment of the said debt to the Bank of Virginia, at Union, by said S. W. N. Feamster. And also as to the market value of the Confederate States treasury notes, or Virginia bank paper, paid by said S. W. N. Feamster, in 1862 and 1863, as security or endorser for said Thomas L. Feamster; and also as to whether the said Dickson judgment debt has been paid, and, if not, to whom it was due, and also the legal priorities of the debts against the land in the bill mentioned, including the Dickson judgment, if not paid. And that such commissioner should be required to reform the second statement of Commissioner Walker, as matters of account between Thomas L. Feamster and S. W. N. Feamster, so as to conform the same, as nearly as may be, to the principles settled in this opinion.

For the foregoing reasons, the said decree of the circuit

court of the said county of Greenbrier, rendered in this cause, on the thirtieth day of November, 1872, must be reversed, and the appellants recover against the appellees, S. W. N. Feamster and Thomas L. Feamster, their costs in this court about the prosecution of their appeal expended.

And this Court, proceeding to render such decree in the cause, as said circuit court ought to have rendered, it is adjudged, ordered, and decreed, that this cause be remanded to the circuit court of said county of Greenbrier, with instructions to recommit so much of the supplemental report of Commissioner Walker as is embraced by the second statement thereof of the accounts between S. W. N. Feamster and Thomas L. Feamster, for further inquiry, and report as to certain matters of said account therein in this opinion mentioned, according to the principles settled, and directions and privileges given, in said opinion ; and, in doing so, such commissioner shall also ascertain and report, for the action of the Court, whether the said S. W. N. Feamster, on the nineteenth day of January, 1861, or thereabouts, paid and discharged the debt due the Bank of Virginia, at Union, in the proceedings in this cause, and the deed of trust in the bill mentioned, and, if so, how he paid and discharged the same, with a view to a final proper decree as to the same ; and as to the Dickson judgment in the proceedings in said decree mentioned, whether the same has been paid, and, if not, to whom it is due; and also the legal priorities of the debts, as judgment or trust liens against the lands, in the deed of trust made by Thomas L. Feamster to James Withrow, on the second day of October 1860, filed with the plaintiffs' bill mentioned ; and for such further proceedings in said circuit court therein to be had, as may be in accordance with the principles and rules governing courts of equity.

The other Judges concurred.

DECREE REVERSED, AND CAUSE REMANDED.