# WHEELING.

CONRAD, TRUSTEE, *v.* BUCK *et al.*

Submitted August 8, 1882—Decided April 7, 1883.

1. Where a bill is filed against non-residents of the State and others, to which the said non-residents voluntarily appear and answer, and afterwards the plaintiff files in the cause an amended bill containing new and material averments affecting the interests of said non-residents. No appearance is entered by the non-residents to this amended bill and they were proceeded against by order of publication. Their appearance to the orignal bill does not affect their status as non-residents in respect to the allegations in the amended bill, and they have the right under the provisions of sections 26 and 30 of chapter 106 of the Code to have any decree entered in the cause after the filing of such amended bill, affecting their rights, re-heard without showing any excuse for their failure to make defense before such decree was entered. (p. 403.)

2. The pendency of a suit in a foreign court, or the court of another State, will not prevent the institution and prosecution of a suit in the courts of this State for the same cause by the same party; nor will the pendency of such suit entitle a party to a stay of proceedings in a court of this State until the controversy can be determined in such foreign court. (p. 404.)

3. The assignment by one partner of all his interest in the partner-ship and its property to trustees for the payment of debts operates, *ipso facto*, as a dissolution of partnership. (p. 407.)

4. The dissolution of partnership revokes the authority of one part-ner to bind the partnership in reference to any new contract except in settling and paying the debts of the concern. And the agreement of the partners that one of their number shall wind up the business, does not enlarge his powers so as to enable him to impose any new liability upon the firm, or create a cause of action against the other partners. (p. 407.)

5. A party, who as trustee, has an interest with others in the prop-erty of a dissolved partnership, in order to prevent suits against such property, pays off a note against said partnership which he as trustee was under no obligation to pay, using his own funds for such payment. HELD:

I. Such payment is regarded in law as having been made by a stranger to the transaction, and does not make said party the assignee of such note or substitute him to the rights of the original holder or payee of said note. (p. 408.)

II. But, having paid said note at the request of the managing partner, the party so paying it will be treated as a simple contract creditor of said firm on an implied promise to pay him the amount he paid for the use of said firm. (p. 409.)

6 In a suit in equity brought for the settlement of an insolvent partnership, the assets of which are insufficient to pay the debts, and the contest in the suit is wholly between the creditors, the partners being non-residents and not appearing in the suit, one creditor should be permitted to avail himself of the bar of the statute of limitations against the claims of other creditors in any proper manner; for instance, by exceptions to the report of a commissioner made in the cause. (p. 410.)

7. The managing partner of a dissolved partnership has authority to insure the firm property if done in good faith, and having such authority he may charge the firm assets to refund premiums paid for such insurance by a third party at his request. The premiums so paid are part of the expenses incurred in managing the property and as such entitled to be paid as preferred claims against the firm assets, and are not affected by the statute of limitations until a settlement of the partnership accounts has been made. (p. 413.)

Appeal from a decree, with *supersedeas* to a part thereof, of the circuit court of the county of Hampshire, rendered on the 10th day of September, 1880, in a cause in said court then pending, wherein Holmes Conrad, trustee, was plaintiff, and William M. Buck and others were defendants, allowed upon the petition of said Conrad.

Hon. James D. Armstrong, judge of the fourth judicial circuit, rendered the decree appealed from.

The facts of the case are stated in the opinion of the court.

*Holmes Conrad,* for appellant, cited the following authorities; 29 Gratt. 697; 17 Gratt. 336; 2 Lead. Cas. Eq. 281; 6 Watt. & S. 190; 2 Patt. & H. 11; 2 Gratt. 372; Pars. Part. (3d ed.) 174.

*D. B. Lucas,* for appellant, cited the following authorities: 16 W. Va. 625; 17 Gratt. 321; 7 Gratt. 380; 2 Munf. 352; 7 W. Va. 63.

*C. W. Dailey,* for appellees, cited the following authorities: Acts 1875 ch. 56 p. 128; Code ch. 124 § 14; *Id.* ch. 106

§ 26; Acts 1870 ch. 109; 17 W. Va. 278, 288, 298; 28 Gratt. 716, 723; 32 Gratt. 482; 8 Ohio 328 (32 Am. Dec. 722); 1 Coll. pp. 186, 187 § 109; *Id.* § 401 note; *Id.* § 107; Pars. Part. 522; 5 Johns. Chy. 525, 526; 1 Rob. 93; 17 Gratt. 335; 5 Leigh 633; Pars. Part. 420, 423; *Id.* 160, 174, 175; 10 Ia. 451; 1 Coll. § 102.

SNYDER, JUDGE, announced the opinion of the Court:

By written agreement, between John R. Ricards, John N. Buck and Thomas L. Blakemore, dated October 19, 1849, the said parties agreed to form themselves into a partnership under the firm name of Ricards, Buck & Blakemore, for the purpose of purchasing certain lots and tracts of land in and near Watsontown—Capon Springs—in the county of Hampshire and State of Virginia, and of erecting thereon an extensive hotel and other improvements, the said Ricards to furnish one half and the other partners one fourth each of the capital which was to be thirty thousand dollars, and the profits, losses and expenses to be shared by each partner in the proportion of his interest in the firm, the partnership to continue five years from date and no partner to assign his interest in the firm or its assets without the written consent of the others. Afterwards, by two deeds, the one dated November 1, 1849, and the other December 27, 1849, H. M. Brent and others trustees of Watsontown conveyed to said John R. Ricards, John N. Buck and Thomas L. Blakemore certain lots of land in said Watsontown, and between said date and the 16th of April, 1852, two other tracts or parcels of land in said county were conveyed to said partners in their firm name. The said firm erected on said Watsontown lots an extensive hotel, known as the "Mountain House," and other improvements for the accommodation and entertainment by them and their lessees of travelers and visitors to the Capon Springs, and purchased and placed in said hotel a large amount of personal property, consisting of household and kitchen furniture, &c. The said firm and their lessees thereafter used said hotel, personal property and premises in the business of hotel-keeping until the same was sold under a decree in this suit. By deed, dated July 3, 1850, the said John N. Buck, with the written consent of the other partners, conveyed the

one half of his one fourth interest in the said firm and its property to William M. Buck and from that time the said William M. Buck became, also, a partner in said firm, holding the one eighth interest therein.

The said John R. Ricards and one Richard J. Frisby, partners composing the firm of Ricards, Frisby & Co., of Baltimore city, failed in business and by deed, dated May 3, 1852, and duly recorded in said Hampshire county May 4, 1852, the said partners of the firm of Ricards, Frisby & Co. conveyed, assigned and transferred to John H. B. Latrobe and George W. Dobbin of the said Baltimore city, all their goods, wares, merchandise, stock in trade, and all estate, property, interests and debts of every kind, wheresoever situated, belonging to said Ricards and Frisby as co-partners or to either individually or in which they, or either of them, have any interest, in trust to secure the payment of all the just claims of all such creditors of the said John R. Ricards and Richard J. Frisby as should within sixty days from the date of said deed execute and deliver to said Ricards and Frisby a full release from all such claims, but the said trustees shall first apply the individual property of each partner to the payment of his individual debts and likewise the partnership property to the partnership debts of said firm. The names of the creditors secured by this deed do not appear therein, or elsewhere in this record, nor is it shown that any creditor ever accepted the conditions of said deed, nor that the trustees have ever paid anything to any creditor.

The said Thomas L. Blakemore, having, also, become insolvent, he, by deed dated July 8, 1853, and promptly recorded in said Hampshire county, conveyed to Giles Cook, trustee, all his interest and estate in all the real and personal property of the said firm of Ricards, Buck & Blakemore, in trust to secure the payment of certain debts and to indemnify certain endorsers therein mentioned, including among the latter William M. Buck and James R. Richards. And, by deed, dated January 1, 1861, the said John N. Buck conveyed to said William M. Buck all his remaining interest in the said firm of Ricards, Buck & Blakemore, thus making said William M. Buck the owner of a one fourth interest in the property of said firm.

In December, 1860, John N. Buck and William M. Buck instituted their suit in the circuit court of Warren county, Virginia, against Thomas L. Blakemore, John R. Ricards, William H. Hoffman and John H. B. Latrobe and George W. Dobbin trustees and others, for the purpose of having a settlement of the partnership of Ricards, Buck & Blakemore and an account of the debts of the individual members, and having a sale of the real and personal property of said firm under a decree of the court. A decree was made in said suit, on the 29th day of March, 1861, ordering a sale of all the real and personal property of the said firm of Ricards, Buck & Blakemore, and also referring the cause to a commissioner for a settlement of the partnership accounts with a view to the distribution of the proceeds of the sale. Thus the suit rested until 1869, when Commissioner Turner filed his report in the cause, in which he reports the following debts as due from said firm, viz: To Wm. M. and John N. Buck three thousand three hundred and sixty-two dollars and twenty-four cents; to Latrobe and Dobbin trustees fifteen thousand three hundred and sixty-eight dollars and sixty-six cents; and to John Ward one thousand seven hundred and eighty-seven dollars and fifty-eight cents, all as of January 1, 1869. This report was by decree of December 15, 1871, confirmed; but, subsequently, the said suit was transferred to the corporation court of the city of Winchester in which court by a decree thereof entered on the 22d day of October, 1878, the said decree of confirmation was set aside, and the cause again referred to a commissioner to settle said partnership accounts, &c. And by another decree of January 25, 1879, the cause was again referred to a commissioner to report upon the matters required by the aforesaid decree of March 29, 1861, with instructions to the commissioner to regard the said report of Commissioner Turner as *prima facie* correct. No report appears to have been made under this decree or any further proceedings had in the cause so far as the record here discloses.

The plaintiff in this suit, Holmes Conrad, on the 8th day of June, 1875, held the bond of W. B. Buck, Wm. M. Buck, John N. Buck and James R. Richards for three thousand dollars, and, also, the note of the same persons, other than

John N. Buck, for five hundred and eighty-three dollars and thirty-six cents, and on that day he instituted his suit in the county court of Hampshire county against said debtors, John H. B. Latrobe and George W. Dobbin, trustees, and others, for the purpose of attaching and subjecting to the payment of his said debts the interests of said Wm. M. Buck, John N. Buck and James R. Richards—they being non-residents of the State—in the real estate and personal property of the the said firm of Ricards, Buck & Blakemore in said county. By the consent of the parties a decree was entered directing the sale of said property; a sale was made on the 16th of August, 1876, and by a subsequent decree said sale was confirmed and the proceeds thereof amounting to over eleven thousand dollars, were placed in the hands of the receiver of the court. Pursuant to a decree entered in said court a commissioner made and filed his report showing the liens on said property, which said report was by a decree passed June 6, 1877, confirmed without exceptions. Subsequently, the cause was removed to the circuit court of said county and by a decree entered by said circuit court, April 22, 1878, the said decree of the county court of June 6, 1877, was set aside on the petition of Latrobe and Dobbin, trustees. The cause having been again referred to a commissioner; on March 24, 1879, Commissioner Gilkeson reported: 1st. That the only partnership debt due from said firm of Ricards, Buck & Blakemore is a debt in favor of John Ward for two thousand four hundred and eighty dollars and ninety-three cents; 2d. That after the payment of said debt, Latrobe and Dobbin trustees for John R. Ricards are entitled to be paid their account for money paid to Wm. H. Hoffman and for insurance on the property of the firm, aggregating twenty-two thousand five hundred and sixty-eight dollars and thirty-four cents as of April 17, 1879; and 3d. That after the payment of these two debts the plaintiff's debts by virtue of his attachment are the first lien on whatever remains of the interests of Wm. M. and J. N. Buck in the property of said firm.

By decree of September 12, 1879, said report as to the debt of John Ward was confirmed without objection, and the other matters therein having been excepted to by the plaintiff, the report as to them was re-committed to said commis-

sioner, who on February 11, 1880, filed his final report, the conclusions of which are as follows:

1st.—That the firm of Ricards, Buck & Blakemore is indebted to Wm. M. Buck and John N. Buck, March 1, 1880, three hundred and ninety-six dollars and thirty-nine cents.

2d.—That said firm is indebted to Latrobe and Dobbin, trustees, at same date, twenty-one thousand eight hundred and sixty-one dollars and twenty-six cents.

3d.—That these two sums and the Ward debt before allowed greatly exceed the proceeds of the sale of the property of said firm, the said proceeds being about eleven thousand dollars.

To this and said commissioner's report of March 24, 1879, the plaintiff, Conrad, excepted on the following grounds:

"1. That the commissioner has undertaken to adjudicate and to determine the character and amount of the claim of Messrs. Dobbin and Latrobe, trustees, although it appears that this claim is now the subject of a suit in chancery instituted for the sole purpose of ascertaining the state of the partnership accounts long before the institution of this suit, and yet pending in the Hustings court of Winchester, to which proceedings Messrs. Dobbin and Latrobe are parties, and are now before that court asserting said claim, and the same yet remains unascertained and altogether undetermined.

"2. The claim allowed to Dobbin and Latrobe, trustees, is not the claim asserted by them in this proceeding, but altogether another and different claim, and held (if at all) in a different right, and wholly unsustained by any competent proof in the cause, and long since barred by time.

"3. Because by the records of Hampshire county the property in question appears as real estate vested by deed in J. R. Ricards, Jno. M. Buck and Tho. L. Blakemore as joint tenants, and not otherwise, and no subsequent use of this property in the prosecution of a business as co-partners could impress upon it the character of partnership assets as against subsequent creditors or purchasers; and

"4. That Dobbin and Latrobe can have no claim of any kind against the fund due under the pleadings and proofs in the case."

The court by its final decree, entered on the 10th day of September, 1880, overruled the plaintiff's exceptions to, and confirmed the said commissioner's report of February 11, 1880, and ordered the proceeds of the property of Ricards, Buck & Blakemore to be distributed:

*First.*—To the payment of the costs of this suit;

*Second.*—To the payment of the debt of John Ward, two thousand four hundred and eighty dollars and ninety-three cents with interest on one thousand one hundred and seven dollars and fifty-six cents, part thereof, from April 17, 1879; and

*Third.*—The residue to be paid ratably to John H. B. Latrobe and George W. Dobbin, trustees of John R. Ricards, and the plaintiff Holmes Conrad attaching creditor of Wm. M. Buck in the proportion of the amounts ascertained to be due them respectively as follows: To Latrobe and Dobbin, trustees as aforesaid, twenty-one thousand eight hundred and sixty-one dollars and twenty-nine cents with interest on nine thousand six hundred and ninety dollars and fifty-four cents, part thereof, from March 1, 1880, and Wm. M. Buck three hundred and ninety-six dollars and thirty-nine cents, with interest on three hundred and five dollars and seventy-four cents, part thereof, from March 1, 1880, till paid.

From this decree the plaintiff, Conrad, has appealed to this Court.

Preliminary to the main question, the appellant claims that the circuit court erred (1) in setting aside the decree of the county court of June 6, 1877, confirming the commissioner's report, and (2) in not delaying the proceedings in this cause until the rights of the parties could be determined in a suit brought in the circuit court of Warren county and now pending in the corporation court of the city of Winchester in the State of Virginia—the said suit having been brought before this suit for the purpose of settling the partnership of Ricards, Buck & Blakemore. These two claims it seems to me answer each other; because, if it was error for the court to decree in favor of Latrobe and Dobbin, trustees, before the final determination of the Winchester suit, then it was equally erroneous for the appellant to institute this suit and obtain a decree in his favor while the Warren county suit was pending and undetermined. But assuming that they do not destroy

each other, I am still of opinion the circuit court did not err in these matters. The original bill conceded that "the interests of Wm. M. Buck, John N. Buck and John R. Ricards and others have been ascertained and determined in a chancery suit now pending in the circuit court of Warren county, Virginia." The defendants Latrobe and Dobbin, though non-residents of the State, voluntarily appeared and answered said bill insisting upon and reserving their rights under the decrees in said Warren county suit. Subsequently, the plaintiff filed an amended bill averring, for reasons therein stated, that he did not intend by the allegations of his original bill, "to admit, to any extent, the existence of any lien or charge upon the real estate in West Virginia, securing the debt claimed to be due to Latrobe and Dobbin, trustees, or that the lien of his attachment was in any way inferior in right to the said claim of said trustees." To this amended bill said trustees made no appearance and they were proceeded against as non-residents by publication. This amended bill having introduced new and material allegations, either in conflict with or in explanation of the original bill affecting the claim of the said trustees, they could not be bound by said new allegations or any decree entered thereon except as non-residents, and as such they had under the provisions of sections twenty-six and thirty of chapter one hundred and six of the Code, the right to appear and have any such decree re-heard without showing by petition or otherwise any excuse for their failure to answer before said decree was entered.

The objection on account of the pendency of the suit in the Winchester court is equally destitute of merit. When the suit is proper for a court of equity, but not for the particular court in which it is brought, the objection must be taken by plea in the court below. And in no case will the pendency of a suit in a foreign court, or the court of another State, bar the right of the plaintiff or any other party thereto, to prosecute another suit in this State for the same cause of action—1 Dan. Chy. Pr. 633; *Allen* v. *Watt*, 69 Ill. 655; *Cole* v. *Flitcraft*, 47 Md. 312; *Lockwood* v. *Nye*, 2 Swan. 515. Nor will a stay be allowed for such cause. *Phosphate Sewage Co.* v. *Mollison*, 1 App. Cas. 780.

We now come to the material question in this cause, raised by the plaintiff's exceptions to the reports of the commissioner, which is, did the circuit court err in decreeing that the claim of Latrobe and Dobbin, trustees, should be paid, as the debt of a partner, out of the proceeds of the sale of the property of the firm of Ricards, Buck & Blakemore? This claim as presented by the record is as follows:

"RICARDS, BUCK & BLAKEMORE,

"To J. H. B. Latrobe and George W. Dobbin, trustees of John R. Ricards, DR.

| | | |
|---|---:|---:|
| For this am't paid to William H. Hoffman, a creditor of the firm of Ricards, Buck & Blakemore, in payment of his debt, and substituting the said Latrobe and Dobbin in his stead as a creditor for the sum so paid of the said firm of Ricards, Buck & Blakemore...$ | 6,197 | 31 |
| Int. on $4,657.44, part of sum, from Jan. 1, 1852, to Jan. 1, 1869 | 4,750 | 58 |
| Int. on $1,539.89, part of said $6,197.31, from March 1st, 1852, to 1 Jan'y, 1869 | 1,555 | 25 |
| For this sum paid for insurance premiums on the property of said firm from the time the assignment to said L. and D. was made for account of said partnership till the said partnership could be wound up | 3,493 | 23 |
| Int. on the same from respective dates of payment | 1,698 | 61 |
| | $17,694 | 38 |
| From which deduct four years' interest on principal, $9,690.54, during war | 2,325 | 72 |
| | $15,368 | 66" |

This account, it will be observed, consists of but two items, (1) the "Hoffman debt," as it is called, and (2) the claim for money paid for insurance. The facts in regard to these claims as shown by the record, are as follows: After the completion of the hotel and improvements at Capon Springs the partners of the firm of Ricards, Buck & Blakemore had a settlement of their partnership affairs, and it was then ascertained that John R. Ricards, one of the partners, had overpaid his part of the outlay six thousand one hundred and ninety-seven dollars and thirty-one cents, as of January 1, 1852, for which sum the said firm gave him their note, which note the said Ricards, afterwards, transferred to Wm. H. Hoffman, of Baltimore city, in part payment of a debt due from him to said Hoffman. The said partnership, having

been dissolved by the assignment by said John R. Ricards, as one of the firm of Ricards & Frisby, on the 3d day of May, 1852, of his interest therein to said Latrobe and Dobbin, trustees, the said Hoffman by his attorney, in the summer of 1852, after said dissolution, demanded of Wm. M. Buck, one of the partners, who was then in charge of the firm property, payment of said note or satisfactory security, otherwise he threatened to bring suit. Some time after this the said Wm. M. Buck and George W. Dobbin, one of the said trustees, met at Capon Springs by appointment. The said Buck furnished to said Dobbin a statement of the condition of the said firm, showing that it had no assets except the hotel and furniture and that it owed debts to the amount of about twenty-seven thousand dollars. The creditors were urgent for the payment of their debts, and the owners were then holding said property at eighty thousand dollars and expecting to make a speedy sale of it which would be interfered with if suits were brought against it. In order to avoid suits, it was then and there agreed between said Buck and Dobbin that, if Buck would undertake the payment of all other debts from the rents and other sources, Dobbin would settle the said "Hoffman debt" and keep up the insurance on the property which was then very heavy; and that afterwards the said "Hoffman debt" was paid by Latrobe and Dobbin trustees and the property kept insured by them at an aggregate outlay of three thousand four hundred and ninety-three dollars and twenty-three cents. Dobbin, in his deposition states, that when it was agreed that he and Latrobe, trustees, would pay the "Hoffman debt," they were by such payment to "substitute themselves as creditors of Ricards, Buck & Blakemore in the place of Hoffman," and that the "three thousand four hundred and ninety-three dollars and twenty-three cents was for insurance premiums paid by Latrobe and Dobbin for insurance upon the Mountain House and its furniture by agreement among the parties; that the same was paid for Ricards, Buck & Blakemore, and was to be repaid to Latrobe and Dobbin by Ricards, Buck & Blakemore upon the final settlement of the accounts of that firm." "After the assignment by Ricards to Latrobe and Dobbin the business of said firm was never carried on except

with a view to the winding up the same as soon as practicable thereafter, and the preservation of the property and the interest of all concerned."

By the terms of the partnership agreement, hereinbefore referred to, it was declared, that no partner shall transfer his interest in the firm or its property without the written consent of the other partners. As before shown, John R. Ricards, one of the partners without the consent of the others, by deed dated May 3, 1852, made an assignment of his interest in the firm and its assets to Latrobe and Dobbin trustees. This assignment operated *ipso facto* a dissolution of the firm as of that date. This assignment would have effected a dissolution independent of the expressed stipulation in the articles of co-partnership. Pars. on Part. 400 ; 1 Collyer's Part. § 102.

After the dissolution of a partnership the partners become tenants in common of the social property, and the right of one partner to dispose of the interest of his co-partners in the property ceases, except so far as is necessary to dispose of the social effects and pay the debts of the firm, and his authority to bind the partnership in reference to any new contract is absolutely revoked, and he can only act in settling and paying the debts of the concern. 1 Collyer's Part. § 107 and notes. And it seems that even where a partner is, upon the dissolution, authorized to settle up the business of the firm, he cannot bind the firm by giving a note for a firm debt, *nor by way of renewal.* *Valkenburgh* v. *Bradley,* 14 Iowa 112; *Parker* v. *Cousins,* 2 Gratt. 372. The agreement of the partners that one of their number shall wind up the business, does not enlarge his powers so as to enable him to .impose any new liabilty upon the the firm. *Myatt* v. *Bell,* 41 Ala. 232. After the dissolution, no partner can create a cause of action against the other partners, except by an authority conferred on him for that purpose. *Bell* v. *Morrison,* 1 Pet. 360; *Yale* v. *Yale,* 13 Conn. 185; *Montague* v. *Reakert,* 6 Barb. 393; *Parker* v. *McComber,* 18 Pick. 505.

In *Bell* v. *Morrison,* 1 Pet. 351, it was sought to take the claim out of the statute of limitations against the firm upon the acknowledgment of one partner. The court held that it

was not sufficient, nor admissible for that purpose. In *Lane v. Tyler*, 49 Me. 252, it was held that one partner, after the dissolution, could not bind the others by an express promise made to one who knew of the dissolution.

It was after the dissolution of the partnership of Ricards, Buck & Blakemore that the arrangement was made between Wm. M. Buck and George W. Dobbin for the payment of the Hoffman debt. The most that can be claimed for the authority of Buck to make any agreement is that he was the settling partner of the firm. He was the trustee of the other partners in charge of the firm property for the purpose of winding up the concern in such manner and with such authority, ánd none other, as the law conferred upon him; because no special authority is shown or claimed. He could not, therefore, in his situation create any new obligation or impose any new liability upon the firm. Nor could he make any arrangement or contract for the firm which would prevent the other partners from relying upon the statute of limitations or any other defense.

With his authority, thus limited, had said Buck any power to bind the firm by the alleged agreement, between him and Dobbin, that the said Dobbin and Latrobe, upon the payment of said Hoffman debt, should be substituted to the rights of said Hoffman? Dobbin testifies that this was the agreement at the time he undertook the payment, but Buck, who gives all the details of the arrangement between Dobbin and himself in regard to this debt, and does so, as his testimony shows, certainly without any hostility to the claims of Latrobe and Dobbin, makes no mention of any such agreement. And the improbability, that there was any such agreement, is much increased by the facts in relation to the payment made by Latrobe and Dobbin. When they paid Hoffman they took no assignment of the note from Hoffman, nor was there any agreement or understanding between them and Hoffman, that the note or the original debt was to survive its payment. Instead of producing the note, either with or without any assignment, they file in this cause as the basis of their claim an account for money paid by them for the use of the said firm of Ricards, Buck & Blakemore. If such an agreement had been actually made, the best evidence of it, and that

which would naturally have suggested itself to the parties, would have been to have taken an assignment of the note and thus kept it alive.

These facts go very far to indicate, that this agreement for substitution was an after-thought brought about, perhaps, without intentional wrong or perversion by the anxiety of the witness and the exigency of the occasion. For at the time this alleged agreement was made it was confidently expected that the property would sell for eighty thousand dollars, or near that sum, and produce an ample sum to pay off all the debts and reimburse any outlays or advances which any party might have made. It was not then deemed necessary to be over-cautious about preserving any supposed lien or priority for money advanced. The reasonable conclusion therefore, seems to be, that Dobbin was mistaken when he stated that an agreement for substitution to the rights of Hoffman was made between him and Wm. M. Buck at the time the arrangement was made for the payment of the Hoffman debt.

But conceding that such an agreement had been attempted, under the authorities above cited it would have been inoperative against the firm or any of its members, except said Buck, and could not be set up in this suit so as to affect the partnership-property. For to allow it to affect the partnership-property would be in effect to bind the other partners by taking from them a part of the assets which they would otherwise receive. It does not appear out of what funds the said Latrobe and Dobbin, trustees, paid said debt, and as it was not one of the debts secured by the trust-deed to them, from Ricards & Frisby, they had no right to pay it out of the trust-funds, and we must, therefore, conclude that they did not, in that respect, violate their trust, but that they paid it out of their own private funds. They were under no legal obligation to pay it, and having paid it, they necessarily did so voluntarily and as strangers to the transaction. And having thus paid it at the request of one of the partners, in a court of equity they, as the equitable owners thereof, may enforce its payment. *Neely* v. *Jones*, 16 W. Va. 625; *James* v. *Stephens*, 2 Pet. & H. 11; *Douglass* v. *Fagg*, 8 Leigh 588. But by such payment they cannot certainly be in any better

situation than a surety, who pays off the debt of his principal. And it is well settled, that where a surety pays a debt of his principal, which is evidenced by bond, the surety is not substituted to the rights of the creditor so far as to make him a bond-creditor. The payment completely discharges and destroys the bond and leaves the surety to his remedy on his account for money paid for the use of his principal. The only contract available to the surety after such discharge of the bond, is an implied promise that the debtor will repay him the amount so paid for his use. *Powell* v. *White*, 11 Leigh 309; *Kendrick* v. *Forney*, 22 Gratt. 748; *Copis* v. *Middleton*, 4 Russ. R. 277.

Latrobe and Dobbin being, then, simple contract-creditors of the firm of Ricards, Buck & Blakemore upon an implied promise, that the firm will pay them the amount paid by them to Hoffman for the use of the firm, the statute of limitations would bar the said claim at the expiration of five years from the date of such payment. But in order that the statute of limitations may be made available, it must be pleaded formally at law, or relied on in some form in the court below in equity. This may be done in equity by demurrer, plea, answer or by exceptions to the report of a commissioner in proper cases. It remains, then, to enquire whether the statute was in this case so relied on in the court below as to make it available to the appellant here.

The partnership of Ricards, Buck & Blakemore is utterly insolvent, the assets being entirely insufficient to pay all of its debts including that of Latrobe and Dobbin. None of the partners have answered the bill and John R. Ricards is not even a party to the cause. This is a contest among the creditors of the firm and a creditor of part of the individual members of the firm. In *Feamster* v. *Withrow*, 9 W. Va. 296, which was a contest over the estate of an insolvent debtor, the cause had been referred to a commissioner and the debtor failed to file exceptions, but some of the creditors excepted to the debts of others on the ground that the debts so excepted to were payable in Confederate money and should be scaled. It was objected that the right to rely on such defense was personal to the debtor and could not be made by a creditor of the debtor. The Court, in its opinion,

held that: "In all cases of this sort, each creditor interested in the trust subject, and who is a party, should be allowed to appear before the commissioner, and should be permitted, there, if he chooses, to contest the claim of any other creditors"—citing 1 Story's Eq. § 548; *Wilkins* v. *Gordon*, 11 Leigh 547; *Griffin* v. *Macauley*, 7 Gratt. 476; 9 W. Va. 323. In *Woodyard* v. *Polsley*, 14 W. Va. 211, this Court held that: "The statute of limitations may be relied on before the commissioner, even where it has not been pleaded before the court prior to the order of reference." And also: "Where a reference is made to a commissioner to settle the accounts of an intestate, the creditors may appear before the commissioner and contest the claims of each other." And they may so "contest such claims on the ground that they are barred by the statute of limitations." *Wordenbaugh* v. *Reid*, 20 W. Va. 588 ; *Crawford* v. *Carper*, 4 *Id.* 56, 71.

Under the terms of the statute of limitations, which declares that, "no suit or action shall be brought" after the prescribed limit, the courts at first held, even in actions at law, that it was to be taken as an absolute bar, and operated by its own force, *and without being pleaded.* But it was afterwards determined that, although the action might appear from the declaration to have been brought after the prescribed limit, still as the plaintiff might be within some of the various exceptions mentioned in the statute, this doctrine was incorrect; and the rule was established that, *in all actions at law*, where the defendant wished to rely on the bar of the statute he must plead it. In a court of equity, however, it is different. In that court it is well settled, that if it appear on the face of the bill that the suit is barred by the statute, a demurrer will lie to it. Because if the plaintiff's case is within any of the exceptions of the statute the fact must be stated in the bill—Ang. on Lim. § 294; Story's Eq. Pl. §§ 378, 389, 390; *Kane* v. *Bloodgood*, 7 Johns. Ch. 90.

Without intending to decide whether or not in all cases one creditor may avail himself of the bar of the statute of limitations against the claim of another creditor, I am of opinion, upon both reason and authority, that in suits brought for the liquidation and settlement of insolvent partnerships when the fund is insufficient to pay all the debts and the

contest is wholly between the creditors of such partnership, and the partners do not appear in the cause in any manner, one creditor should be permitted to avail himself of the bar of the statute of limitations against the claims of other creditors in such suit in a court of equity in any manner allowed by the practice in such courts whether it be by plea, answer, demurrer or exceptions to a commissioner's report made in the cause. In such cases the fund is the matter in controversy, and is generally in the hands of the court or the surviving or settling partners who hold it as trustees for the benefit of creditors. The reasons which permit the creditors of the estate of a decedent to rely on the statute of limitations, or in any other legal mode to contest the claims of each other, it seems to me, apply with equal force to cases of this character. I, therefore, think and hold that the appellant here has the equitable right to rely on the statute against the claims of the appellees, Latrobe and Dobbin, to the same extent and with equal effect as if it had been relied on by the members of the partnership.

The Hoffman debt was paid off by Latrobe and Dobbin probably in 1852 or 1853, certainly not later than 1854; because, Wm. M. Buck says, in his deposition, that the arrangement to pay off this debt was made by him with Dobbin about the close of the spring's season of 1852 or 1853, and that it was made because this debt as well as other debts were being pressed for payment. It is not presumable, therefore, that the payment was delayed beyond the year 1853 or 1854. And, moreover, the account filed by said Latrobe and Dobbin, heretofore copied in this opinion, shows that the interest is charged on four thousand six hundred and fifty-seven dollars and forty-four cents, part of said debt, from January 1, 1852, and on one thousand five hundred and thirty-nine dollars and eighty-nine cents, the residue thereof, from March 1, 1852; and Dobbin, in his deposition, says: "As stated in said account, the said payment was made in two items. The dates from which the same respectively bear interest are stated in said account." The decided inference from this statement is that said debt was paid off by Latrobe and Dobbin in 1852. But even conceding it was not paid until 1854, it was barred before the institution of the suit in the circuit

court of Warren county. That suit was instituted, as we have seen, on the 29th day of December, 1860, which was more than five years, the statutory bar, after the date of the payment. The appellant regularly excepted to said claim upon the ground that it was barred by time. My conclusion, therefore, is that the said account of Latrobe and Dobbin for money paid in discharge of the said Hoffman debt was barred by the statute of limitations before the institution of this or the Warren suit and cannot interfere with the right of the appellant, Conrad, to subject so much of the fund produced by the sale of the partnership property of Ricards, Buck & Blakemore as his attachment debts are entitled to in the division of said fund, after the payment of subsisting partnership debts against it.

In regard to the claim of Latrobe and Dobbin of three thousand four hundred and ninety-three dollars and twenty-three cents for premiums paid by them for the insurance of the hotel and furniture belonging to the partnership of Ricards, Buck & Blakemore I am clearly of opinion, that it, with the accrued interest thereon from the time it was paid, is a subsisting claim. This is a claim incurred for the preservation of the property and would have been allowed to Wm. M. Buck as the managing partner of the firm, if he had paid it, in the settlement of his accounts with the firm and could not have been affected by the statute of limitations until after such settlement was had. It would have been credited to him as a part of the legitimate expenses incurred in the management of the property for the interest of the firm and all parties interested therein. And he, having the authority to incur this outlay, it follows necessarily that he had the authority to bind the property of the firm by any proper agreement made by him with Latrobe and Dobbin for the payment of said premiums. *Brown* v. *Higginbotham*, 5 Leigh 583. But as this is a part of the expense-account incurred in the management of the trust-property, it should be paid like other expenses of the settling or managing partner properly incurred, out of the fund as a preferred claim.

I am, therefore, of opinion that the circuit court, by its decree of September 10, 1880, erred in so far as it overruled the exceptions of the plaintiff, Conrad, to the report of the

commissioner objecting to the allowance of the claim of six thousand one hundred and ninety-seven dollars and thirty-one cents in favor of Latrobe and Dobbin, trustees, known as the Hoffman debt. Instead of overruling said part of said exceptions the said court should have sustained the same to the extent of disallowing as against the plaintiff any part of said six thousand one hundred and ninety-seven dollars and thirty-one cents and its interest, and that it should have decreed the fund arising from the sale of the partnership property of Ricards, Buck & Blakemore in the order and priorities following :

*First.*—To the payment of the costs and expenses of this suit including all proper commission for the care of the fund, loaning and collecting the same;

*Second.*—The claim of Latrobe and Dobbin for three thousand four hundred and ninety-three dollars and twenty-three cents with interest thereon from the date or dates at which the same was expended by them for the insurance of the firm property;

*Third.*—The claim of John Ward for two thousand four hundred and eighty dollars and ninety-three cents with the proper interest thereon till paid;

*Fourth.*—The three hundred and ninety-six dollars and thirty-six cents with the proper interest thereon ascertained to be due from the firm to Wm. M. Buck one of the partners thereof; and

*Fifth.*—The residue to be distributed ratably among the partners of the said firm according and in proportion to their respective interests in the said partnership and paid to them respectively or to the assignees of such as have assigned or transferred their interests therein, or any part thereof.

But no part of the said three hundred and ninety-six dollars and thirty-six cents, nor any part of the distributive shares of said Wm. M. Buck, John N. Buck, M. B. Buck and James R. Richards or any of them whose interests have been attached by the plaintiff, Conrad, in this cause, should be paid to them, until a sum sufficient to satisfy the two debts of the said plaintiff in his bill mentioned, should have been deducted therefrom, and said sums to the extent of the plaintiff's said debts, if sufficient, should have been ordered

to be paid to him, and if not sufficient, so much thereof as might be should be ordered to be paid to him on his said debts.

It is, therefore, considered, that for the errors aforesaid the said decree must be reversed with costs to the appellant against the appellees, J. H. B. Latrobe and George W. Dobbin, trustees; and this cause is remanded to the circuit court of Hampshire county to be there proceeded in according to the principles and directions set forth in this opinion and further according to the rules and practice in courts of equity.

THE OTHER JUDGES CONCURRED.

DECREE REVERSED.    CAUSE REMANDED.