| 27 | 483 |
|----|-----|
| 28 | 567 |
| 32 | 587 |
| 33 | 694 |
| 33 | 735 |

| 27 | 483 |
|----|-----|
| 42 | 389 |

| 27 | 483 |
|----|-----|
| f63 | 520 |

| 27 | 483 |
|----|-----|
| f66 | 373 |

# CHARLESTON.

Roots *et als.* v. MASON CITY S. & M. Co. *et als.*

Submitted January 27, 1886.—Decided February 13, 1886.

1. Where a case is made out between co-defendants by evidence arising from pleadings and proofs between plaintiffs and defendants, it is the duty of a court of equity to make a decree between the defendants in order that such defendants shall not be obliged to litigate such case in another suit. (p. 488.)

2. A bill in equity is filed by all the individuals composing the partnership of R. & Co. and others to which the said partnership as such and others are made defendants, the principal object of the bill is to sell the property of a corporation and distribute the pro-

ceeds among the holders of coupon bonds which are liens on said property, but the bill also avers that the defendants R. & K. are indebted to R. & Co. in a specified sum, to secure which R. & Co. hold as collaterals a number of said coupon bonds owned by R. & K., the defendant K., of the firm of R. & K., by his answer denies that any such indebtedness exists or that said bonds are held by R. & Co. as collaterals. HELD:

The controversy thus raised between R. & Co. and R. & K. must be regarded as a controversy between them as plaintiffs and defendants, and not between them as co-defendants, it being immaterial that R. & Co, are not as a firm made plaintiffs to the bill since all the members composing said firm are plaintiffs and as such assert their claim against R. & K.   (p. 489.)

3. Where the dealings between merchant and merchant or merchant and factor have ceased and the accounts between them have been so adjusted that the party in whose favor the balance appears might bring an action at law thereon, then from the time of such adjustment the statute of limitations will commence to run as against such balance.   (p. 490.)

4. The accounts between merchant and merchant or merchant and factor, which are excepted from the operation of the statute, must be a *direct* concern of trade; liquidated demands which are only traced up to the trade of merchandise are too remote to come within the description, and they are not excepted from the bar of the statute.   (p. 491.)

5. By the dissolution of a partnership, the authority of one partner to bind the partnership in reference to any new contract, is revoked; therefore, after the dissolution, one partner can not, without special authority or the consent of his co-partners, execute a note for a debt due from the partnership that will bind the other partners; nor can he, without such authority or consent, transfer or pledge the partnership goods or securities to a third person even to secure a debt due to such third person from the partnership.   (p. 492.)

6. Where a creditor holds a pledge or collateral security for his debt, he will be entitled to retain the same in his possession against the pledger or debtor, notwithstanding the statute of limitations is, or might be, successfully pleaded against the debt for the security of which the pledge was made.   (p. 494.)

7. One partner is not entitled to claim from the partnership compensation for his services in the business without a special contract for such compensation.

*J. W. English* and *Gunn & Gibbons* for appellant.

*Knight & Couch* and *Simpson & Howard* for appellees.

SNYDER, JUDGE :

In August, 1872, J. A. Waddell, assignee in bankruptcy of the Mason City Coal and Salt Company, conveyed to James P. Kilbreth the coal and salt property lately owned by said company, consisting of about 237 acres of land with the improvements thereon, and certain privileges and franchises attached thereto, situate at Mason City, Mason county, in this State. By an arrangement between G. Y. Roots and said Kilbreth, they became the joint owners of said property, and from August, 1872, to December, 1875, they as partners under the firm name of Roots & Kilbreth, conducted the business of manufacturing and selling salt on said property. During the same time, Roots & Co., a partnership of which said G. Y. Roots was the owner of seven tenths, were engaged in the commission business in the city of Cincinnati in the State of Ohio, and the business of both of said firms was for the greater portion of said time under the immediate supervision and management of said Roots, and especially was such the fact in regard to the firm of Roots & Kilbreth.

In October, 1875, a corporation was created by the name of The Mason City Salt and Mining Company for the purpose of manufacturing salt, &c., at Mason City, with a paid up capital stock of $160,000.00, divided into shares of $50.00, each of which shares said Roots owned 1,592, said Kilbreth 1,592, A. E. Smith 4, James R. Murdock 4, and N. H. McLean 4 ; and by deed dated November 4, 1875, Kilbreth conveyed the aforesaid property to said corporation. And on December 1, 1875, said company conveyed said property to said Kilbreth, as trustee, to secure the payment of 140 coupon bonds of $500.00 each, issued by the company.

In February, 1884, G. Y. Roots, A. E. Smith, H. P. Piefer, J. R. Murdock and C. M. Vancleaf brought this suit in the circuit court of Mason county against the said Mason City Salt and Mining Company, the two firms of Roots & Kilbreth and Roots & Co. and others ; and the plaintiffs, after stating the foregoing facts, allege in their bill, among other matters, that the coupon bonds issued by said company and secured by said trust deed of December 1, 1875, are now held and owned as follows : G. Y. Roots $15,000.00, John W. and James P. Kilbreth $10,000.00, M. M. White $5,000.00, and

the late firm of Roots & Kilbreth $40,000.00 ; that while the said Roots & Kilbreth were in business as partners they became indebted to Roots & Co., in the sum of $23,568.93, including interest to March 1, 1884, which latter firm is now composed of the plaintiffs, G. Y. Roots, A. E. Smith and H. P. Piefer, and said firm is still the owner of said debt; that Roots & Kilbreth deposited with Roots & Co. as collateral security for said debt the $40,000.00 of bonds so owned by their late firm, and that Roots & Co. now hold said bonds as such security ; that owing to the insolvency of said Mason City Salt and Mining Company it has been unable to carry on its corporate business for upwards of two years, and that in consequence thereof a large portion of its property is deteriorating in value and will continue to do so ; they therefore pray that all the property of said company, real and personal, may be sold by a decree of the court and the proceeds held subject to its order, until the court can ascertain, by report of one of its commissioners, to whom said proceeds are due ; that the affairs of said company may be wound up and a decree entered dissolving it according to law, and for general relief.

None of the defendants answered the bill except the said James P. Kilbreth, and he in his answer denies that the said $40,000.00 of bonds are held by Roots & Co. as collateral security for said alleged indebtedness of $23,568.93, or that said indebtedness in fact exists, and prays by way of affirmative relief for an account to be ordered by the court to ascertain the state of accounts between the firms of Roots & Kilbreth and Roots & Co., and that the latter be required to show in what said alleged indebtedness consists, the items of which it is composed and how it was created. The defendant, Kilbreth, filed pleas of usury under the statutes of this State and of the State of Ohio, averring that said alleged indebtedness of Roots & Co. against Roots & Kilbreth is usurious, and he also filed a plea alleging that said indebtedness was barred by the statute of limitations.

The property of said company embraced in the trust deed to secure said coupon bonds was sold under a decree, and the sale confirmed without objection at the price of $12,500.00, which after deducting some charges left about $12,000.00 of which

four sevenths or, say, $6,850.00 would be applicable to the payment of the $40,000.00 of said bonds owned by Roots & Kilbreth.

By decree of September 12, 1884, the cause was referred to a commissioner to report who are the present holders of said coupon bonds, and "to settle the accounts existing between the firms of Roots & Kilbreth and Roots & Co. mentioned in the plaintiff's bill, and report in whose favor the balance exists."

The controverted matters litigated in the circuit court and the only questions presented by the record for the decision of this Court are those arising, nominally, between the firms of Roots & Co. and Roots & Kilbreth, though actually between the plaintiff, G. Y. Roots, and the defendant, James P. Kilbreth, in regard to the said claim of $23,568.93, and the application of the said $6,850.00 realized from the sale of the trust property for the payment of the $40,000.00 of bonds owned by Roots & Kilbreth, and which Roots & Co. assert are held by them as collateral security for the payment of said claim of $23,568.93. On these matters the commissioner took a great mass of depositions, and in his final report he finds and reports, "that Roots & Co. held the bonds amounting to $40,000.00 as collateral security for the payment of a note executed by Roots & Kilbreth, and payable to said Roots & Co. or order, for $23,568.93 dated March 1, 1884, payable six months after date with interest from date at seven *per cent.*;" and he also reports, that the amount of said note, with interest at seven *per cent.* added to May 4, 1885, is $25,507.47. The defendant Kilbreth excepted this report and to each of these findings by the commissioner upon various grounds.

On May 20, 1885, the court pronounced its final decree in the cause, and the said decree, so far as it regards the matter in controversy in this Court, is as follows: "And the court now proceeding to make distribution of the proceeds of the said real and personal estate, is of opinion and doth decide that the aforesaid indebtedness of said Mason City Salt and Mining Company to Roots & Kilbreth is held by said firm of Roots & Co., as collateral to secure any indebtedness due from said firm of Roots & Kilbreth to said firm of Roots & Co., and the court, without adjudicating the

amount of said indebtedness in this cause, is of opinion and doth decide, that the evidence in the cause shows that said indebtedness is of such an amount as to entitle the said Roots & Co. to the entire proceeds of the sale of said real estate applicable to said indebtedness of said company to said Roots & Kilbreth." Then, after ordering the payment of said fund as above indicated, the decree proceeds : "And the court, without passing *seriatim* upon the exceptions to the commissioner's report, doth overrule all of said exceptions inconsistent with the principles adjudicated in this decree, and the said report, as modified and corrected in this decree, is approved and confirmed." It further declares that, "nothing in this decree shall prejudice the rights of either party in any suit which may be hereafter brought to settle the transactions heretofore had between the said Roots & Co. and Roots & Kilbreth, except so far as the proceeds of said real estate applicable to said decree of Roots & Kilbreth against said Mason City Salt and Mining Co., is applied to the indebtedness due from said Roots & Kilbreth to said Roots & Co." From this decree the defendant, James P. Kilbreth, obtained this appeal.

A preliminary question is raised by the appellees, Roots & Co., which must be disposed of before we can consider the errors assigned by the appellant. The said appellees contend that the court properly declined to adjudicate the accounts and settle the indebtedness between the firms of Roots & Kilbreth and Roots & Co., because there were no pleadings in the cause which could possibly justify the court in adjudicating said matters. Both of said firms being defendants, and said matter so foreign to and distinct from the whole object and purpose of the suit, there could, upon well-settled principles, be no decree between them as to said accounts and indebtedness. In support of this position they cite *Vance* v. *Evans*, 11 W. Va. 342; *Ruffner* v. *Hewitt*, 14 *Id.* 739; *Worthington* v. *Staunton*, 16 *Id.* 208, and 2 Barton's Ch'y Pr. 805.

These authorities are all in harmony with the well established rule in equity practice, that a decree between co-defendants can be based only upon the pleadings and proofs between the plaintiffs and defendants; but where a case is

thus made out it is the duty of the court to decree between co-defendants. The rule is well and forcibly stated by Lord Eldon in *Chamley* v. *Dunsany*, as follows: "Where a case is made out between defendants, by evidence arising from pleadings and proofs between plaintiffs and defendants, a court of equity is entitled to make a decree between the defendants. Further, a court of equity is bound to do so. The defendant chargeable has a right to insist that he shall not be liable to be made a defendant in another suit for the same matter that may there be decided between him and his co-defendant. And the co-defendant may insist that he shall not be obliged to institute another suit for a matter that may be there adjusted between the defendants. And if a court of equity refused to so decree, it would be good cause of appeal by either defendant." 2 Scho. & Lefr. 718.

It seems to me, therefore, if this were strictly a controversy between co-defendants, the appellant would have been entitled to a settlement of the accounts and the ascertainment of the indebtedness, if any, by Roots & Kilbreth to Roots & Co. In fact, to the extent of $6,850.00 the court did ascertain said indebtedness to exist, but declined to do more. As I understand the decree, it finally settles, that said indebtedness to that extent does exist, and also finally determines that Roots & Co. shall be paid said sum as the proceeds of the sale applicable to the $40,000.00 of the coupon bonds of Roots & Kilbreth, and that the application and payment of this sum to Roots & Co., on their alleged debt, would be *res judicata* in any future suit which might be brought under the reservation in said decree. It is plain that if it was necessary or even proper to that extent to decide the controversy between Roots & Co. and Roots & Kilbreth, which seems to be conceded by the appellees, then it was equally necessary and proper that the whole controversy as to said indebtedness should have been decided.

But in my view of the pleadings in this cause this is not a controversy between co-defendants. It is essentially a litigation between plaintiffs and one of the defendants. The members of the firm of Roots & Co., as the bill shows, are G. Y. Roots, A. E. Smith and A. P. Piefer, and they are each and all plaintiffs in the bill, while the firm of Roots &

62

Kilbreth and the appellant James P. Kilbreth are defendants to the bill. The plaintiffs aver in the bill that the firm of Roots & Kilbreth are indebted to the firm of Roots & Co. in the sum of $23,568.93. This averment is positively denied in the answer of the defendant Kilbreth, and he asks by way of affirmative relief, that the true state of accounts between said firms shall be ascertained. This, it seems to me, most unquestionably puts the controversy as to said indebtedness directly in issue between the plaintiffs composing the firm of Roots & Co. and the defendant, Kilbreth, representing himself as a member of the firm of Roots & Kilbreth. I do not understand that, in a court of equity where the substance rather than mere form is regarded, the plaintiffs can evade an undesirable portion of the controversy presented by their bill by making themselves defendants in their firm names. The firm of Roots & Co. were in fact, though not in the firm name, plaintiffs in this suit, and as such they asserted a claim to the whole of the personal estate belonging to the Mason City Salt and Mining Company, and by the decree of the court the whole proceeds of said estate was paid to them. Other facts might be referred to to show that Roots & Co. were necessarily treated as if they were in reality plaintiff's in this suit, but the fact appears to me to be too apparent to require further discusssion. My conclusion, therefore is, that the controversy as to the indebtedness of Roots &. Kilbreth to Roots & Co. was properly involved in this suit, and that the circuit court erred in declining to settle it fully and finally.

We come now to the errors assigned by the appellant, the first of which is, that the court erred in not finding that the claim of Roots & Co. against Roots & Kilbreth was barred by the statute of limitations as to the appellant. Our statute provides that, "an action by one partner against his co-partners, * * * or upon accounts concerning the trade of merchandise between merchant and merchant, their factor or servants, where the action of account would lie * * * may be brought until the expiration of five years from a cessation of the dealings in which they are interested together, but not after." Sec. 6 ch. 104, Code.

The operation of this statute is the same in cases of partners and in cases of merchant and merchant, their factors or

servants.    In either case where the business has ceased and the accounts have been so adjusted that the party in whose favor the balance appears may bring an action at law thereon against the other party, then from the time such right of action accrues the statute of limitations will begin to run, and the period of five years from that time will bar any action or suit for such balance.    Even in cases of a partial settlement, where a balance is thereby ascertained in favor of one of the parties against the other, although such settlement is not full and complete, the statute will run as to such balance and the portion of the account embraced in it.    *Foster* v. *Rison* 17 Gratt. 321 ; *Sandy* v. *Randall* 20 W. Va. 244; *Boggs* v. *Johnson* 26, *Id.* 821.

The accounts between merchant and merchant, which are excepted from the statutory bar, must be a *direct* concern of trade.    Liquidated demands or bills and notes, which are only traced up to the trade of merchandise, are too remote to come within the description, and they are not excepted from the bar.    *Ramchander* v. *Hammond*, 2 Johns. 200 ; *Webber* v. *Tivil*, 2 Saund. 124; *Barber* v. *Barber*, 18 Ves. 286 ; *Caster* v. *Murray*, 5 Johns. ch. 522.    If the items of the account are all on one side, the claim will not be within the reason or principle of the exception, which intended open, and current accounts, where there were mutual dealings and mutual credits or debits. *Cotes* v. *Harris*, Bull. N. P. 149 ; *Murray* v. *Caster*, 20 Johns. 583 ; *Wortham* v. *Smith*, 15 Gratt. 487, 494, and cases cited ; *Watson* v. *Lyle*, 4 Leigh 236, 249.

The firm of Roots & Kilbreth was formed in 1872, for the purpose of manufacturing and selling salt, and quit business in December, 1875.    During its existence the firm of Roots & Co. acted as its factors or agents for selling salt and purchasing supplies.    While said firm was in business the firm of Roots & Co. rendered their accounts to it semi-annually, and they have since the dissolution of it rendered sundry accounts to the appellant, in all twenty-two in number. All of these were rendered as accounts stated, showing a specified sum upon each as the amount due from Roots & Kilbreth to Roots & Co.    The accounts themselves show that no supplies were furnished to said firm by Roots & Co. after it closed business in December, 1875, and the last credit

for salt is given in 1876. The only changes appearing in any of the accounts rendered subsequent to 1876, so far as I can discover, are made by the additions of interest on balances in the previous accounts and credits for interest collected on the $40,000.00 of coupon bonds held as collateral security and, perhaps, some payments made on said account by Roots & Kilbreth from the sales of some others of said bonds held by them as individuals. It is entirely certain that after 1876 there were no dealings whatever concerning the trade of merchandise between the firm of Roots & Kilbreth and their factors or agents, Roots & Co., of the character that would give either firm the right to an action of account; and consequently the statute of limitations commenced to run against the said demand of Roots & Co. at that time, and it therefore became barred in 1881, more than two years before this suit was commenced.

After this suit was instituted G. Y. Roots, without the knowledge or consent of Kilbreth, made a note to Roots & Co. for the alleged balance of said accounts, $23,568.93, dated March 1, 1884, to which he signed the name of the late firm of Roots & Kilbreth. This note, while it is binding upon Roots, would be ineffectual to bind Kilbreth, even if it did not appear that Roots was a seven tenths partner in interest of the firm to which he executed the note ; because after the dissolution of a partnership the authority of one partner to bind the partnership, in reference to any new contract, is revoked. Even when the agreement between the partners is, that one of their number shall wind up the business, such agreement does not enlarge his powers so as to enable him to impose any new liability upon the firm or create a cause of action against the other partners. *Conrad* v. *Buck*, 21 W. Va. 396 ; 1 Collyer on Part. 174 ; 2 Matt. Dig. 414, note 17, and cases cited ; sec. 9, ch. 104, Code p. 548.

The conclusion thus announced, would dispose of this controversy but for the questions presented by the claim of Roots & Co., that the $40,000.00 of coupon bonds were deposited with them as collateral security for their alleged debt of $23,568.93. It is denied by the appellant that said bonds were ever with his consent pledged as such security. There can, I presume, be no question as to the law, that none of

the partners can, after the dissolution of the partnership, without the consent of the others, buy or sell or pledge goods or other property on account of the partnership; nor can one of them, without such consent, indorse or transfer the partnership securities to third persons, even to secure a debt due from the partnership, nor in any other way make his acts the acts of the partnership without special authority from his co-partners.   Story on Part. §322; *Robb* v. *Mudge,* 14 Gray 534; 1 Collyer on Part. 174.

But on the other hand, it is equally clear, that during the active existence of the partnership and before its dissolution, any member of the partnership is authorized to do any act affecting the business of the partnership or its property, which could be done by all the partners, because he is the legally authorized agent of the partnership for the conduct of its business. One partner, therefore, before the dissolution, could, I apprehend, legally pledge the securities of the partnership for the loan of money from a third person or for the security of a debt due from it, to a third person. But I doubt whether a partner could, in any case, pledge the securities of one partnership, in which he is interested, to another partnership of which he is also a partner and in which he has a larger interest.   *Newcomb* v. *Brooks,* 16 W. Va. 32; *Reilly* v. *Oglebay,* 25 *Id.* 36.

I have carefully examined the evidence on this question, which is somewhat contradictory, but from the whole testimony and the admitted facts and circumstances I am satisfied that said bonds were pledged by the firm of Roots & Kilbreth to the firm of Roots & Co. as collateral security for any sum or balance that might be due from the former to the latter.   G. Y. Roots, one of the partners, testifies that to this positively; and while Kilbreth, the other partner, does not admit that such was the fact, but circumstantially and indirectly denies it, he testifies to facts which amply show, that if he did not expressly agree that these bonds should be so held by Roots & Co., he knew Roots & Co. claimed to hold them as security for their debt, and that they applied the interest collected upon them for a number of years, perhaps all the interest paid on them from time to time, to the payment of their debt.   All this was done

with the full knowledge and acquiesence of Kilbreth. He says, in his deposition, that he requested Mr. Roots as president of the company to take charge of said bonds, which he did, and that he instructed Mr. Murdock, the secretary, in whose office they were, to hand them over to Mr. Roots. He then says: "As the bonds might be sold by Mr. Roots and myself, *the money was to be paid over to Roots & Co.*, but they were not deposited with Roots & Co. as collateral." In a letter to Mr. Roots, dated December 28, 1877, in which he proposes to sell to Roots his stock in the Mason City Salt and Mining Co. for $15,000.00 and apply the same to the indebtedness of Roots & Kilbreth to Roots & Co., he says, he is willing to make this sale and application of the proceeds, "provided that I have the privilege of withdrawing an equal amount of the bonds now in your possession." The bonds here referred to are the $40.000.00. There are many other facts and circumstances in proof tending to support the conclusion I have reached in regard to the deposit of these bonds as collateral security for the debt of Roots & Co., but I need not refer to them, as I deem what has been said sufficient to sustain my conclusion.

The next question to be considered is, does the fact, that the debt of Roots & Co. is barred by the statute of limitations, release the bonds of Roots & Kilbreth deposited as security for said debt? Can Roots & Kilbreth withdraw said securities without the settlement and payment of any balance due on said debt? I think not. The statute of limitations destroys and defeats simply the remdies for the recovery of the debt; it does not operate in law or in fact as a discharge of the debt. The debt remains and the legal remedies for its enforcement only are destroyed. The creditor can not resort to the courts for redress, but he is not required to give up any rights or securities which he may possess and which he may apply or hold for the satisfaction of his debt without resorting to the courts. The owner of the security is bound in conscience and honestly to abstain from withdrawing the pledge until he has satisfied the debt, and he can resort to the courts to reclaim his pledge with no more effect or propriety· than can the creditor to enforce his barred debt. On this subject the law is settled that the pledgee is entitled to retain the pledge

or security in his possession against the pledgor, notwithstanding the statute of limitations might be successfully pleaded to an action on the debt for the security of which the pledge was made. Colebr. on Coll. sec. 101; *Chouteau* v. *Allen*, 70 Mo. 290, 341; *Camden* v. *Alkire*, 24 W. Va. 674.

It follows from what has preceded that the circuit court should have investigated the accounts and transactions involved in this cause between Roots & Kilbreth and Roots & Co. and have determined whether there was any indebtedness by either of said firms to the other. This was necessary in order to ascertain the right of Roots & Co. to retain the proceeds applicable to the payment of the bonds held by them as security for their debt, if there is in fact any thing due them. If said debt shall equal or exceed said proceeds, then the whole thereof shall be decreed to Roots & Co. and if it is found to be less, then only so much as shall equal the debt so found due shall be paid to them and the residue shall be paid to Roots & Kilbreth. But in no event shall a personal decree for any sum on account of said debt be decreed against the appellant, James P. Kilbreth. For the failure of the circuit court to fully adjudicate and determine these matters, and because it failed to consider the defence of usury relied on by the defendant Kilbreth, which the commissioner reported would "materially alter the statement of accounts between these firms," so much of the decree of May 20, 1885, as adjudges and decrees that Roots & Kilbreth are indebted to Roots & Co. in a sum equal to or greater than the proceeds of sale applicable to the payment of collaterals held by Roots & Co. belonging to said firm of Roots & Kilbreth, and orders said sum to be paid to Roots & Co., is reversed and set aside.

What has been said disposes of all the questions passed upon in this cause by the circuit court, but inasmuch as the plea of usury was filed in the said court and argued in this court, and also because the defence raised by said plea will be necessarily involved in the decision to be rendered by the circuit court upon the remanding of the cause to that court, we are required by the laws of this State, to indicate the views of this Court on the law applicable to said defence.

It is contended by the appellees, Roots & Co., that from the facts appearing in the cause, the usury laws of the State

of Ohio must govern in this controversy, and that the laws of that State must be proved in this State. By our statute the courts of this State are bound to take judicial notice of the statutes and laws of another State or country. Consequently, no such proof is required. Sec. 4, chap. 13, Code.

The said appellees also seek to avoid the defence of usury by denying that the apparent excess of interest, included in their account, is in fact usury, but that such excess was really for services rendered under a contract between the firms of Roots & Kilbreth and Roots & Co. As this position and the the question presented by it depend upon the facts proved, or which may hereafter be proved, I refrain from giving any opinion in regard thereto, but will simply state, that as a matter of law, it is well settled that one partner is not entitled to claim from the partnership compensation for his services in the business without a special contract for such compensation. *Forrer* v. *Forrer*, 29 Gratt. 134; 1 Pars. on Contr. 165; Story on Part. § 182.

Having disposed of all the questions fairly arising upon the record, and finding that there are errors in the decree of May 20, 1885, it is ordered that said decree to the extent and in the particulars hereinbefore specified, be and the same is reversed, and in all other respects it is affirmed, and the cause is remanded to the circuit court for further proceedings there to be had in accordance with the principles announced in this opinion.

AFFIRMED IN PART.    REVERSED IN PART.    REMANDED.